## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 05-292 (RWR)** |
| | : | |
| **v.** | : | |
| | : | |
| **REGINALD JEROME ROGERS,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## GOVERNMENT'S MOTION TO
## EXCLUDE EXPERT TESTIMONY

The United States of America, by and through the undersigned Assistant United States

Attorneys, hereby move this Court for an order under Rules 12.2(d) and 16(d)(2) of the Federal

Rules of Criminal Procedure excluding the testimony of proposed defense experts Lanning

Moldauer, Ph.D., Kathleen F. Sampeck and Edward G. Varone.  As more fully discussed below,

on June 12, 2006, the defendant provided the government with "notice" of the above mentioned

experts and their anticipated testimony well outside the time required by Rule 12.2(b) of the

Federal Rules of Criminal Procedure and the Pretrial Order in this matter.  Further, pursuant to

Rule 16(b)(1)(C)(ii) of the Federal Rules of Criminal Procedure the "notice" provided by

defendant regarding the experts' anticipated testimony is insufficient because it fails to provide

adequate notice of the experts' opinions, fails to state the bases and reasons for those opinions,

and also fails to state their qualifications.  Additionally, the experts' anticipated testimony, as

best the government can ascertain from the limited disclosure, is either inadmissible or has only

dubious relevance, and thus should not be admitted.

## I.     Introduction

The defendant, Reginald Rogers, an attorney, is charged with conducting a long term

fraud scheme where he ingratiated himself to his elderly clients, obtained control over their finances and then stole their life savings.  Specifically, Rogers provided some minimal legal work for his elderly clients, then visited them in their homes.  During these visits, Rogers would perform household chores such as getting groceries, doing laundry and washing dishes.  These elderly clients began to rely upon Rogers' visits for companionship as well as assistance.  Rogers took over control of his elderly clients' finances by obtaining power of attorney, or in the case of one estate, becoming personal representative.  Rogers withdrew funds from client bank accounts and deposited those funds into his own accounts or co-mingled client funds. Rogers also obtained signed blank checks from clients and paid his bills with client money, wrote checks for "cash" or wrote checks to himself.  Further, Rogers routinely took funds from one client's bank account to reimburse other client's bank accounts which he had previously fraudulently depleted.  The scheme began in 1998 and continued even after Rogers was notified of investigations by Bar Counsel and the Federal Bureau of Investigation in November 2003.

## II.    Procedural History

On August 4, 2005, the government charged Reginald Rogers by Indictment with thirteen counts of mail fraud, in violation of 18 U.S.C.§1341, causing an act to be done, in violation of 18 U.S.C. § 2 and criminal forfeiture, in violation of 18 U.S.C. § 982.  On August 8, 2006, the defendant was arraigned and the Court set a ten-day deadline for filing motions.[1]  On August 19, 2005, the defendant, through his counsel, Tony Axam, Jr. of the Federal Public Defender requested discovery pursuant to Rule 16 and specifically pursuant to Rule 16(a)(1)(G).  See attached Exhibit one.  Also on August 19, 2005, the government provided the defendant with its initial discovery materials and requested reciprocal discovery from the defendant.  The

---

[1]    On August 18, 2005, the government filed a Motion for Introduction of Evidence.

government's request stated in pertinent part:

> At this time, the Government formally requests all defense
> discovery materials pursuant to Fed. R. Crim. P. 16(b) including,
> but not limited to, any and all documents or tangible evidence
> which you intend to use at trial, **any expert testimony you intend
> to use at trial, and any tests or examinations performed on
> behalf of the defendant, as well as making available the results
> of examinations and tests, and providing us with a written
> summary of expert testimony**.  In addition, pursuant to Rule 12.1,
> the government requests notice of any alibi defense, pursuant to
> **Rule 12.2, notice of any insanity defense or any intention to
> introduce evidence of mental condition or defect, and pursuant
> to Rule 12.3**, notice of any defense of public authority. (Emphasis
> added)

See attached Exhibit two.  On January 30, 2006, the Court entered a Pretrial Order requiring the

parties to submit trial materials, proposed voir dire, preliminary jury instructions and witness lists

by March 28, 2006.  The case was set for trial on April 6, 2006.  On February 22, 2006, J.

Michael Hannon, Esquire entered his appearance as retained counsel for the defendant.  On

March 15, 2006, the parties filed a Joint Request for Status Conference, wherein defense counsel

indicated that the defendant would be able to meet all existing pretrial and trial schedules

reflected in the Pretrial Order.  On March 23, 2006, the Court denied the parties' Joint Request

for Status Conference.  On April 6, 2006, the Court continued the trial because of a scheduling

conflict which would give the defense insufficient days for his case.  The case was rescheduled

for trial to July 6, 2006.  On March 28, 2006, the defendant filed a witness list which listed sixty-

three individuals, including four individuals with the annotation "(expert)."  See attached Exhibit

three.  On May 11, 2006, the government reiterated its request for discovery and notification of

any anticipated expert witness testimony.[2]  See attached Exhibit four.  The defendant failed to

---

[2]    On June 5, 2006, the government once again made a written request for Rule 12.2 notification and Rule 16 discovery regarding expert witnesses.  See attached Exhibit five.

provide any discovery to the government.

On June 12, 2006, the defendant notified the government by e-mail that he intended to present testimony from the following three experts witnesses: (1) **Lanning Moldauer, Ph.D.**, a psychologist, who would testify about: (a) the psychological impact of Rogers' interactions with his elderly clients, (b) his capacity to manage a solo legal practice in elder care law; (c) his opinion that, "Rogers never intended to cheat his clients, to harm them financially, or to gain financially at their expense;" and (d) Rogers behavior in failing to respond to the criminal investigation, bar counsel proceedings and a civil law suit; (2) **Kathleen F. Sampeck**, an "expert in the life care needs of the elderly," who would testify about: (a) the life care needs of the elderly in general; (b) the costs associated with the life care needs of Rogers' clients; and (c) the psychological and medical benefits of Rogers' clients being sustained in their own homes; and (3) **Edward G. Varone**, an attorney who practices elder law, who would testify about: (a) the nature of the attorney-client relationship with elderly clients and in particular Rogers' relationship with the alleged victims in this case; (b) the life-planning tools available to an attorney; (c) the obligations of the attorney to the client under various planning tools; (d) the professional duties that arise from the relationship; (e) procedures of Bar Counsel in supervising the ethical conduct of attorneys practicing in the field of elder law and Rogers in particular.[3] See attached Exhibit six. To date, the defendant has not filed sufficient notice pursuant to Rules 12.2 and 16.

---

[3]    On June 9, 2006, the government received a telephone call from defense counsel where he named the above three defense expert witnesses and provided general information about their areas of expertise and testimony. The information which was provided was not as specific as the defendant's June 12, 2006 letter.

III.    **Argument**

**A. Defense Expert Witnesses' Testimony Should Be Excluded Under Rule 16**

Rogers' bare bones June 12, 2006 "notice" of the anticipated expert testimony of three witnesses is not sufficient.  To begin with, Dr. Moldauer's proposed testimony suggests that he has an opinion about the defendant's mental state without identifying the mental disease, defect or condition from which the defendant suffers that effects his mental state.  As such, the defendant's expert notice regarding Dr. Moldauer is meaningless.  The government knows no more now about Rogers' mental deficiencies then it did when Rogers listed Dr. Moldauer on his witness list.

Even if the Court finds that Dr. Moldauer has an opinion, the defendant nonetheless failed to identify the bases and reasons for his conclusions.  Presumably, Dr. Moldauer has performed psychological testing, interviewed the defendant and maybe others, read documents and performed research, all of which may have formed his opinion, but the defendant fails to supply any information about the bases of Dr. Moldauer's opinions and how these different potential sources of information support his conclusions, whatever they might be.  For example, the defendant states that Dr. Moldauer will "opine on Mr. Rogers capacities as an attorney to manage a solo practice as an elder law attorney."  In the first instance, this summary fails to state how a psychologist has the expertise to render an opinion regarding the defendant's ability to practice law in general or in a particular field.  Further, the "notice"  fails to inform the government what Roger's capacity was as a practicing attorney, what formed the basis of Dr. Moldauer's opinion and, which pieces of information Dr. Moldauer deemed clinically significant in forming his

conclusions.

In addition, the defendant fails to provide any information regarding Dr. Moldauer's proposed testimony regarding "the psychological impact of Rogers' interactions with his elderly clients." Just what psychological impact did having elderly clients have on the defendant? Is there a recognized mental disease or defect associated with dealing with the elderly? Further, although the defendant's "notice" claims that Dr. Moldauer has an opinion regarding how the defendant dealt with his various legal difficulties, nowhere does the defendant provide what conclusions Dr. Moldauer formed as a result. Moreover, the defendant's "notice" regarding Dr. Moldauer's opinion regarding the defendant's incapacity to form the "intent" to defraud also suffers from a lack of specific information.

This expert disclosure makes a mockery of Rule 16. If Congress intended that a defendant pursuing a lack of *mens rea* defense could satisfy his or her disclosure obligations by merely reciting their intentions to challenge their capacity to form intent, then there would be no need for further disclosure beyond that mandated by Rule 12.2. But, Rule 16 expressly provides that a defendant introducing evidence pursuant to Rule 12.2 must provide a summary of the witness' opinions, as well as the bases and reasons for those opinion. Through this language, congress clearly required defendants to amplify their Rule 12.2 disclosures, which do not require such descriptions. The defendant's failure to do so is a breach of his discovery obligations.

Likewise, there are similar deficiencies in the "notice" provided regarding Ms. Sampeck's and Mr. Varone's proposed testimony. The defendant's "notice" lacks a recitation of the experts' opinions and, as a result, fails to provide the bases and reasons for any, as of this moment, unknown conclusions. For instance, the defendant does not provide information about Ms.

6

Sampeck's opinions regarding the life care needs and costs for the elderly in general or for the victims in this case.  Nor does the defendant provide a statement regarding Mr. Varone's opinions as to the attorney-client relationship involving elderly clients or what duties an attorney may have regarding those clients.  The defendant merely provides the government with areas of possible testimony.  This general proffer is exactly what the Rules prohibit.

The defendant's late, incomplete, and insufficient expert disclosure is nothing more than a transparent attempt to gain a tactical advantage over the government.  This is true for two reasons.  First, as the procedural history described above makes clear, the defendant has failed to provide the government with any discovery to date.  The government has repeated its attempts to timely obtain information regarding discovery and defense expert witnesses, but to no avail.  This is particularly disturbing since, according to the defendant's "notice," Dr. Moldauer, was consulted at least several times after the initiation of the investigation, which occurred beginning in November 2003.  Furthermore, the defense failed to provide any expert opinions, such as specifying any mental disease or defect that the defendant suffers from and failed to identify his experts and their opinions with the exception of the inadequate June 12, 2006 e-mail.  Had the government not forced the issue of the defendant's mental health and non-compliance with Rule 16, the government likely would have had the three expert witness opinions, such as they are, served upon it the morning of trial.

Second, it is surprising given Dr. Moldauer's apparent opinions regarding the defendant's *mens rea* that he has not identified for the defendant a mental disease, defect or condition that bears on the defendant's intent to defraud.  According to the information provided by defendant Dr. Moldauer is "a practicing psychologist and recognized expert in evaluating psychological

issues that impair attorneys' professional competence and performance." If he is prepared to opine, as he is, that Rogers has a mental disease or condition that impaired his ability to commit fraud, then he must be able to state what that disease or condition is and why that condition effects his *mens rea* to commit the crimes for which he is charged. Similarly, the opinions of his other two experts should have already been formed and available for disclosure. Therefore, the fact that the defendant failed to provide those opinions as required by the Rules warrants exclusion of the proposed testimony.

Coming, as it does, shortly before trial, the only sufficient remedy for Roger's Rule 16 violation is to exclude the experts' testimony. Rule 16 provides that where a party fails to abide by its terms, the district court enjoys broad discretion to fashion a range of remedies, including prohibiting the offending party from introducing the undisclosed evidence. The Supreme Court has held that a district court does not abuse its discretion by striking an expert if the Rule 16 violation demonstrates either bad faith or that he defendant was attempting to gain a tactical advantage over the government. Taylor v. Illinois, 484 U.S. 400 (1988).

**B.    Rule 12.2 Requires Advance Notice of The Defendant's Intent To Introduce A *Mens Rea* Defense.**

Rule 12.2 of the Federal Rules of Criminal Procedure requires early advance notice of the defendant's intent to introduce a *mens rea* defense to protect the government from severe prejudice that stems from the last minute disclosure of such evidence. See Advisory Committee Notes to Rule 12.2 ("The objective of [the Rule] is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony"). Although the defendant gave written notice by e-mail on June 12, 2006, that disclosure was meaningless as it

lacked any diagnostic description and, more importantly, any professional documentation.

United States v. Buchbinder, 796 F.2d 910 (7th Cir. 1986)(upholding the district court's decision

to exclude defense evidence proffered under Rule 12.2(b) because, among other things,

defendant provided untimely notice).  Rule 12.2 (d) specifically allows the Court to exclude

expert testimony regarding mental disease, defect or other mental condition bearing upon guilt if

a defendant fails to comply with the notice requirements of Rule 12.2.  Here, the defendant failed

to provide notice to the government of his intent to pursue a mental health defense until three

weeks before trial.  Moreover, according to the defendant's June 12, 2006 submission as well as

the March 28, 2006 witness list, the defendant knew that he was interested in pursuing such a

mental health defense well before June 12, 2006.  Therefore, there is no excuse for defendant's

late notification to the government regarding this defense and such expert testimony should be

excluded.

## C.  Experts' Testimony Should Be Excluded As Irrelevant.

If the Court declines to strike the expert witnesses  testimony on Rules 12 or 16 grounds,

the government remains concerned that the expert testimony will be neither relevant nor reliable.

Under Rule 402 of the Federal Rules of Evidence, the jury shall not be exposed to inadmissible

evidence, "[e]vidence which is not relevant is not admissible."  Rule 401 of the Federal Rules of

Evidence states, that "[r]elevant evidence" is defined as "evidence having any tendency to make

the existence of any fact that is of consequence to the determination of the action more probable

or less probable than it would be without the evidence."  The defendant faces charges of mail

fraud relating to his scheme to steal money from his elderly clients.  Kathleen Sampeck's

proposed testimony regarding the "life care" needs of the elderly is not a fact "of consequence" in

this case, nor is testimony relating to the "psychological and medical benefits of [Rogers'] clients being sustained in their own homes."  Likewise, Mr. Varone's proposed testimony regarding the "nature of the attorney-client relationship with elderly clients" and the "[l]ife-planning tools available to the attorney" are not facts "of consequence."  Moreover, such testimony would be confusing to the jury and should be excluded as evidence.  See Federal Rules of Evidence 403.

WHEREFORE, it is repscetfully requested that the Court exclude the testimony of defendant's three expert witnesses and its motion be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar #451058

_____
Diane G. Lucas D.C. Bar #443610
John D. Griffith Iowa Bar #
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street NW, Fifth Floor
Washington, DC 20530
(202) 514-8097 (Lucas)
(202) 353-2453 (Griffith)

I, hereby certify that a copy of the foregoing motion was served by facsimile and mail upon defense counsel, J. Michael Hannon, Esquire, 1901 18th Street N.W., Washington, DC 20009, FAX: 202-232-3704, on this 14th day of June, 2006.

_____
Diane G. Lucas

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 05-292 (RWR)** |
| | : | |
| **v.** | : | |
| | : | |
| **REGINALD JEROME ROGERS,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## ORDER

After having duly considered the government's Motion to Exclude Expert Testimony, and the defendant's opposition thereto, if any, it is hereby Ordered that the government's Motion is GRANTED. The Court finds that the defendant failed to provide the government with adequate or timely notice of his expert witnesses and, further, that he late and inadequate notice would unduly prejudice the government.

IT IS SO ORDERED.

_____
RICHARD W. ROBERTS,
District Judge


cc:    Diane Lucas, AUSA
       John Griffith, AUSA

       J. Michael Hannon, Esquire
       1901 18th Street N.W.
       Washington, DC 20009