# HANNON LAW GROUP, LLP
## COUNSELORS AND ATTORNEYS AT LAW
1901 18TH STREET, NW
WASHINGTON, DC 20009

J. MICHAEL HANNON *

_____

TREBIE A. VALANCIUS
ADMITTED ONLY IN VIRGINIA;
SUPERVISION BY J. MICHAEL HANNON, A
MEMBER OF THE DC BAR

_____

 * ALSO ADMITTED IN MARYLAND
+ ALSO ADMITTED IN VIRGINIA
• ALSO ADMITTED IN CALIFORNIA

_____

(202) 232-1907
FACSIMILE (202) 232-3704
www.hannonlawgroup.com
jhannon@hannonlawgroup.com

OF COUNSEL

DONALD LEWIS WRIGHT
WILLIAM CLAYTON BATCHELOR*
+
CHARLES I. CATE •

_____

June 15, 2006

**VIA ELECTRONIC TRANSMISSION ONLY**

John D. Griffith
Assistant United States Attorney
Judiciary Center
555 4th Street, N.W.
Washington, D.C.  20530

Re:  U.S. v. Reginald J. Rogers, Crim. No. 05-cr-00292 RWR

Dear Mr. Griffith:

The purpose of this letter is to address the matters raised in the motion you filed yesterday evening related to our expert designations.

As you noted, on March 28, 2006, you became aware that Mr. Rogers intended to call at least five witnesses whom he designated as experts in the Witness List filed with the Court.  Those experts were identified as: FTI Accountant, Raj. P. Mathur, M.D., Lanning E. Moldauer, Ph.D., Kathleen F. Sampeck, and Edward G. Varone.  I believe you were aware at the time, or could easily have determined from colleagues or other resources readily available, the following information about these witnesses: Dr. Mathur is Hattie Mae Goode's physician; FTI performed a summary analysis of the expenses of Minnie Beane, somewhat analogous to Nicholas Novak's summarization for the government of the bank records; Lanning E. Moldauer, Ph.D., is a forensic psychologist; Kathleen F. Sampeck is a life care planner whom you attempted to contact by telephone; Edward G. Varone is an attorney.

Contrary to the factual statements in your motion, the trial date was actually continued on March 27, 2006, the day before our Witness List was filed.

When the trial was continued due to the number of defense witnesses, you heard us advise Judge Roberts in open court on March 27, 2006, that in addition to our fact witnesses, we anticipated calling at least three expert witnesses.  You said nothing to either the Court or to me about discovery of these experts.  With the continuance of the trial to July 6, 2006, both the prosecution team and the defense team stood down from the intense work in which both had

John D. Griffith

June 15, 2006
Page Two

engaged in anticipation of the April 6, 2006, trial date.

Thereafter, in May both teams returned their attention to preparation for the July 6, 2006, trial. On your part, on May 11, 2006, you wrote responding to my written Brady request from almost 2 months earlier of March 16, 2006. We did not renew our work with as much alacrity as you. As I believe you had also learned from my announcement and praecipe, I opened a new law practice at our new location on May 1, 2006. By the way, you are welcome to our Open House to which I enclose an invitation. In any event, we moved into our new location with renovation still going on around us. When you arrive tomorrow to view our discovery, I hope you will enjoy the surroundings of our new building.

As we moved into our new building in May, I was also preparing for oral argument before the District of Columbia Court of Appeals on May 9, 2006, in the disbarment action brought against Mr. Rogers by the Office of Bar Counsel. As you know, the disbarment action resulted from the participation by the FBI and your Office in a Bar Counsel investigation arising out of the complaints of the family of Hattie Mae Goode which form the primary allegations of the indictment. We also were busy preparing a Reply Brief to the United States Court of Appeals for the Fourth Circuit in connection with the civil lawsuit brought by the family of Hattie Mae Goode. As you may know, the civil lawsuit relied in part on the indictment in this case, the testimony by FBI Agent John Cooper in the Bar Counsel proceeding, and the findings of the Bar's Hearing Committee.

In your May 11, 2006, letter, you also noted that while we had provided you with an Exhibit List, we had not yet provided you with the documents themselves. You also stated that you were reiterating your request for "expert witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." You also requested "pursuant to Rule 12.2, notice of any . . . intention to introduce evidence of mental condition or defect . . . ."

I did not respond promptly to your May 11, 2006, request as a result of the activities of the month of May. At 4:51 p.m. on June 5, 2006, you were kind enough to send me an email reminding me of our mutual obligations regarding the upcoming trial. In that email you said:

Hope all is well. This is a follow-up to my May 11, 2006 letter (attached) and prior correspondence requesting reciprocal discovery. I was wondering when we can view the discovery materials and obtain the requested information on the experts and any Rule 12 defenses.

I was in Los Angeles preparing for an argument before the United States Court of Appeals for the Ninth Circuit scheduled for June 7, 2006, returning to Washington, D.C., late on June 8, 2006. Nevertheless, I picked up your email from that location. I have not checked my email but I communicated with you from Los Angeles, either by telephone or by email, advising you that I was in California and would call you on Friday upon my return. I think you may have responded by email stating that you understood my situation.

You did not note my communications to you from California in your motion, but correctly note that I called you as promised on Friday, June 9, 2006. In that conversation, I promised I would send you a letter detailing the anticipated testimony of the experts on Monday, June 12, 2006, and

John D. Griffith
June 15, 2006
Page Three

roughly outlined for you their anticipated testimony.  You asked some questions.  In discussing the anticipated testimony of Kathleen F. Sampeck, you commented "That makes sense" when I described her proposed testimony regarding the costs of home care vs. nursing home care for Mr. Rogers' clients. You asked whether Dr. Moldauer was providing some kind of "diminished capacity defense", and I stated that he would be testifying as to the <u>mens</u> <u>rea</u> element of the crime alleged.  You asked whether Ed Varone was admitted to practice law in Maryland as well as the District of Columbia.  I told you he was barred in both jurisdictions.

        I told you that I was sending you a letter as to Dr. Moldauer, rather than filing the Rule 12.2 notice with the Court, so you could review the notice and let me know what you might want further before we filed the notice.  In my letter to you of June 12, 2006, I closed by asking you to "Please let me know whether you will consent to my filing the notice of expert evidence of mental condition out of time."

        I expected to hear from you as to whether you would consent.  Implicit in my request and my conversation with you was an invitation for you to comment on the expert disclosures.  I hoped to discuss the disclosures with you in an attempt to remedy any problems you felt the Government would encounter due to either the timing of the disclosure or the extent of the disclosure.  Instead, you filed the motion at issue late on Wednesday without any notice to me or contacting me as I requested.

        In your motion you claim that the notices are insufficient under Rule 16.  I disagree, and am familiar with several expert notices from the Government in other cases that offer the same type of descriptions that I have utilized.  Moreover, I do not believe that the proposed testimony of Dr. Moldauer requires notice under Rule 12.2 as his testimony does not bear upon "guilt", as opposed to contesting an element of the Government's case.  I gave you the notice in an abundance of caution.

        You also seek to have the Court strike these witnesses because the notice to you is untimely.  Yet, you do not describe any prejudice or proffer to the Court what the Government would do had this information been disclosed sooner.  Presumably, you would have found notice timely on June 5, 2006, when you sent me your email.  I would have anticipated in your motion some explication of prejudice, since the Government has sought the drastic "remedy" of a pretrial <u>in</u> <u>limine</u> exclusion of a major component of Mr. Rogers' defense.  John, do you really want Judge Roberts to exclude this evidence?  If that is what the Government wants, I would have anticipated seeing a case in your pleading that would justify such an extreme curtailment of Mr. Rogers' Sixth Amendment rights.  Not only was I surprised you filed the motion, but also I was surprised that you cited no authority which would remotely justify an exclusion of this evidence by Judge Roberts, putting aside the relevance argument which is more properly left to determination during the defense case and not pretrial.

        Ms. Lucas signed the pleading, but your name appears below hers.  By citation to the Supreme Court case, I trust you do not intend to suggest to Judge Roberts that I have intentionally and willfully engaged in misconduct and lied to the Court.  That is exactly what defense counsel in the case did at the trial level.  Moreover, Justice Brennan's dissent begins with the words,

"Criminal discovery is not a game", joined by Justices Marshall and Blackmun.  I am not playing a game.  But
John D. Griffith
June 15, 2006
Page Four


given the lack of merit to your motion, I must posit some motive by the Government in filing its motion when I file my opposition.  If you want to know more about my case or want to know more about my experts, why not ask me.  Maybe you will learn what you think you need to know.

I intend to send you another letter providing more detail on these experts; although, I feel strongly that the notice you have received is adequate.  I hope to be able to do that tomorrow.

Upon receipt of the additional information in my next letter, I will ask you to withdraw your motion, obviously preserving your right to object to these witnesses on relevance grounds when they are presented in four weeks.

Thank you for your courtesies.

Sincerely,

*//s// J. Michael Hannon //s//*

J. Michael Hannon