**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Case No. 1:05-cr-00292-RWR |
| v. | : |
| | : |
| REGINALD JEROME ROGERS, | : |
| | : |
| Defendant. | : |

## DEFENDANT'S OPPOSITION TO MOTION TO EXCLUDE EXPERT TESTIMONY

Reginald J. Rogers, through his attorneys at HANNON LAW GROUP, LLP, presents this Opposition to the Government's Motion to Exclude Expert Testimony. In its motion, the Government seeks to exclude in limine three of Mr. Rogers' expert witnesses. Although it appears that the Government has withdrawn its objection to the testimony of the non-mental health experts, Mr. Rogers will, nevertheless, address the Government's contentions with respect to all three witnesses.

## FACTUAL BACKGROUND

On March 28, 2006, Mr. Rogers filed his Witness List even though the April 6 trial date had already been continued to July 6, 2006. He indicated his intention to call at least five witnesses whom he designated as experts in the Witness List filed with the Court. Those experts were identified as: FTI Accountant; Raj. P. Mathur, M.D.; Lanning E. Moldauer, Ph.D.; Kathleen F. Sampeck; and Edward G. Varone, Edq. The Government was aware at the time, or could easily have determined from resources readily available, the following information about these witnesses: Dr. Mathur is Hattie Mae Goode's physician; FTI performed a summary analysis of the expenses of Minnie Beane, somewhat analogous to the Government's proposed summary witness for the voluminous bank records; Lanning E. Moldauer, Ph.D., is a forensic psychologist; Kathleen F. Sampeck is a life care planner whom Assistant United States Attorney John D. Griffith attempted to contact by telephone; Edward G. Varone is an attorney.

Contrary to the assertions in the Government's motion, the trial date was actually continued on March 27, 2006, the day before the Witness List was filed.

When the trial was continued due to the Court's inability to accommodate the number of defense witnesses for the April 6 date, Mr. Rogers' counsel advised Judge Roberts in open court on March 27, 2006, that in addition to the numerous fact witnesses, Mr. Rogers anticipated calling at least three expert witnesses. Mr. Griffith said nothing to either the Court or to counsel for Mr. Rogers about discovery of these experts. With the continuance of the trial to July 6, 2006, both the prosecution team and the defense team stood down from the intense work in which both had engaged in anticipation of the April 6, 2006, trial date.

Thereafter, in May both teams returned their attention to preparation for the July 6, 2006, trial. On his part, Mr. Griffith on May 11, 2006, wrote to counsel for Mr. Rogers responding to the defense Brady request from almost 2 months earlier of March 16, 2006. The defense team did not renew its work with as much alacrity as the Government. Counsel for Mr. Rogers opened a new law practice on May 1, 2006. As counsel moved into the new building in May, they were also preparing for oral argument before the District of Columbia Court of Appeals on May 9, 2006, in the disbarment action brought against Mr. Rogers by the Office of Bar Counsel. The disbarment action resulted from the participation by the FBI and the United States Attorney's Office in a Bar Counsel investigation arising out of the complaints of the family of Hattie Mae Goode which form the primary allegations of the indictment. Counsel also were busy preparing a Reply Brief to the United States Court of Appeals for the Fourth Circuit in connection with the civil lawsuit brought by the family of Hattie Mae Goode. The civil lawsuit relied in part on the indictment in this case, the testimony by FBI Agent John Cooper in the Bar

Counsel proceeding, and the findings of the Bar's Hearing Committee.

In his letter of May 11, 2006, letter, Mr. Griffith also noted that while counsel for Mr. Rogers had provided an Exhibit List, counsel had not yet provided the documents themselves. Mr. Griffith also stated that he was reiterating his request for "expert witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Mr. Griffith also requested "pursuant to Rule 12.2, notice of any . . . intention to introduce evidence of mental condition or defect . . . ."

Counsel for Mr. Rogers did not respond promptly to the May 11, 2006, request as a result of the activities of the month of May. At 4:51 p.m. on June 5, 2006, Mr. Griffith was kind enough to send an email to counsel reminding him of mutual obligations regarding the upcoming trial. In that email, Mr. Griffith stated:

> Hope all is well. This is a follow-up to my May 11, 2006 letter (attached) and prior correspondence requesting reciprocal discovery. I was wondering when we can view the discovery materials and obtain the requested information on the experts and any Rule 12 defenses.

Mr. Rogers' counsel, J. Michael Hannon, was in Los Angeles preparing for an argument before the United States Court of Appeals for the Ninth Circuit scheduled for June 7, 2006, returning to Washington, D.C., late on June 8, 2006. Nevertheless, Mr. Hannon picked up the email from that location. Mr. Hannon advised Mr. Griffith that he was in Los Angeles, and would call Mr. Griffith on Friday. In its motion, the Government does not note these communications from California, but correctly notes that Mr. Hannon called on Friday, June 9, 2006. In that conversation, Mr. Hannon promised a letter detailing the anticipated testimony of the experts on Monday, June 12, 2006, and orally outlined their anticipated testimony to Mr. Griffith. Mr. Griffith asked some questions. In discussing the anticipated testimony of Kathleen

F. Sampeck, Mr. Griffith commented, "That makes sense," when her proposed testimony regarding the costs of home care vs. nursing home care for Mr. Rogers' clients was discussed. Mr. Griffith asked whether Dr. Moldauer was providing some kind of "diminished capacity defense", and Mr. Hannon stated that he would be testifying as to the <u>mens rea</u> element of the crime alleged. Mr. Griffith asked whether Ed Varone was admitted to practice law in Maryland as well as the District of Columbia. Mr. Hannon reported that he was admitted in both jurisdictions.

      Mr. Hannon stated that he intended to send a letter as to Dr. Moldauer, rather than filing the Rule 12.2 notice with the Court, so the Government could review the notice and let counsel know what the Government might wish to do with respect to the Rule 12.2 notice. In that letter to Mr. Griffith of June 12, 2006, Mr. Hannon closed by asking to "Please let me know whether you will consent to my filing the notice of expert evidence of mental condition out of time." A copy of this letter is attached to the Government's motion.

      Counsel for Mr. Rogers expected to hear from the Government as to whether it would consent. Implicit in the request and the prior conversation was an invitation to comment on the expert disclosures. Mr. Rogers counsel intended to discuss the disclosures in an attempt to remedy any problems the Government might encounter due to either the timing of the disclosure or the extent of the disclosure. Instead, the Government filed the motion at issue late on Wednesday June 14, without any notice to counsel for Mr. Rogers or contacting him as had been requested.

      The notice provided to the Government for these three experts consists of the following:

    <u>Kathleen F. Sampeck</u>:  Ms. Sampeck is an expert in the life care needs of the elderly. She will provide opinion testimony on the life care needs of Hattie

      Mae Goode, Minnie Beane, Danzel Lewis and the life care needs of the elderly in general. She will opine on the costs associated with the life care needs of these clients of Mr. Rogers and the psychological and medical benefits of these clients being sustained in their own homes. Ms. Sampeck shall base her opinions on her experience and training, her review of materials provided by the Government, her consideration of materials provided by defense counsel, and the actual evidence presented in Court.

      <u>Edward G. Varone</u>: Mr. Varone is an attorney admitted to practice in the District of Columbia and Maryland. Mr. Varone practices elder law. He is a recognized expert in estate and probate planning and the duties of counsel in serving an elderly client population. Mr. Varone will opine on the nature of the attorney-client relationship with elderly clients, the life-planning tools available to the attorney, the obligations of the attorney to the client under various planning tools, and the professional duties that arise from the relationship. He will opine with respect to the nature of the attorney-client relationship between Mr. Rogers and the alleged victims in this case. He may also opine on the procedures of Bar Counsel in supervising the ethical conduct of attorneys practicing in the field of elder law and in the case of Mr. Rogers in particular. Mr. Varone shall base his opinions on his experience and training, his review of materials provided by the Government, his consideration of materials provided by defense counsel, and the actual evidence presented in Court.

      <u>Lanning E. Moldauer, Ph.D</u>.: Lanning E. Moldauer, Ph.D., is a practicing psychologist and recognized expert in evaluating psychological issues that impair attorneys' professional competence and performance. He has seen Mr. Rogers on several occasions since the initiation of this investigation. Dr. Moldauer will discuss the nature of the attorney-client relationship that Mr. Rogers established with Hattie Mae Goode, Minnie Beane, Danzel Lewis and others from the standpoint of the psychological impact of those relationships on Mr. Rogers. He will also opine on Mr. Rogers capacities as an attorney to manage a solo practice as an elder law attorney. Dr. Moldauer is of the opinion that Mr. Rogers never intended to cheat his clients, to harm them financially, or to gain financially at their expense. Dr. Moldauer may also opine as to the behavior of Mr. Rogers in failing to respond to the criminal investigation which initiated this prosecution, failing to respond to the various Bar Counsel proceedings against Mr. Rogers, and failing to respond to the civil law suit filed against Mr. Rogers by Hattie Mae Goode.

      In the Government's motion, it claims that the notices are insufficient under Rule 16. Mr. Rogers contends that the notices are more than adequate, providing more detail than is typically provided by the Government in other cases of which counsel is familiar. Moreover,

Mr. Rogers contends that the proposed testimony of Dr. Moldauer does not requires notice under Rule 12.2 as his testimony does not bear upon "guilt", as opposed to contesting an element of the Government's case. Mr. Rogers provided the notice only in an abundance of caution. The matter was not further discussed, as Government counsel did not contact Mr. Rogers' counsel as requested.

The Government also seeks to have the Court strike these witnesses because the notice is untimely. Yet, the Government does not describe any prejudice or proffer to the Court what the Government would do had this information been disclosed sooner. Presumably, the Government would have found notice timely on June 5, 2006, when Mr. Griffith sent his email. Notice presumably would also have been timely on June 12, 2006, the date on which counsel for Mr. Rogers' promised his written outline of the testimony.

There is no assertion or explication of prejudice in the Government's motion, which is surprising, since the Government has sought the drastic "remedy" of a pretrial in limine exclusion of a major component of Mr. Rogers' defense. If that is what the Government wants from the Court, one would have anticipated seeing a case in the Government's pleading that would justify such an extreme curtailment of Mr. Rogers' Fifth and Sixth Amendment rights. Not only was it a surprise that the Government filed the motion, but also it is a surprise that the Government cited no authority which would remotely justify an exclusion of this evidence by the Court, putting aside the Government's relevance argument which is more properly left to determination during the defense case and not pretrial.

The Government asserts that Mr. Rogers' counsel's conduct "makes a mockery of Rule 16" and constitutes "a transparent attempt to gain a tactical advantage over the government."

The Government then cites the hoary case of Taylor v. Illinois, 484 U.S. 400 (1988), where defense counsel at trial attempted to add a witness during the government's case and lied to the court about his knowledge as to the witness prior to trial. The Supreme Court understandably found defense counsel's conduct willful and blatant, and expressed concern "with the impact of this kind of conduct on the integrity of the judicial process itself." 484 U.S. at 416. The dissent of Justice Brennan, joined by Justices Marshall and Blackmun, opened with the sentence "Criminal discovery is not a game." The dissent focused on the importance of a defendant's constitutional rights in defense of a criminal case.

Counsel for Mr. Rogers is offended by any implication of the Government's pleading that their conduct is akin to that of defense counsel in the only decision they cite. Moreover, since the Government cannot possibly defend the exclusion of Mr. Rogers' witnesses in the Court of Appeals, one must wonder what the Government really wants. Is criminal discovery a game? By that rhetorical device, no personal criticism of counsel is intended. But if the Government wants to know Mr. Rogers' defense, there are limits on what it is entitled to know before trial.

## LEGAL ARGUMENT

### I. Sufficiency of Notice of Expert Opinion

The type of information required for expert disclosure is clear; however the quantity and specificity required of a defendant under Rule 16(a)(1)(E) "seems unsettled" at best. 25 Moore's Fed. Practice ¶ 616.05[3] (Matthew Bender, 3d ed. 1997). Special constitutional constraints do not permit the same degree of discovery from a defendant in a criminal case as exists in a civil case. Similarly, the scope of discovery from a defendant in a criminal case is less onerous than that imposed on the Government. The tension between fairness in trial preparation and the Fifth

and Sixth Amendments is patent. Because of this tension, "if there is to be any imbalance in discovery rights, it should work in defendant's favor." Wardius v. Oregon, 412 U.S. 470, 475 n.9 (1973).

The notice of expert testimony provided by Mr. Rogers exceeds that required by the Rule and by every case that has been discovered by counsel. More importantly, comparison of Mr. Rogers' notice with the types of notice routinely used by the United States Attorney for the District of Columbia is educational. The Government routinely provides a boilerplate notice of Narcotics Expert which, though lengthy, provides absolutely no details regarding the actual testimony of the expert. See Anonymous Discovery Letter Extract, attached. Moreover, the Government does not even disclose the identity of the expert or his/her qualifications in such cases.

In a recent bank fraud case, the Government's notice of expert witness consisted of the following:

> The government intends to call as an expert witness in the area of bank fraud and materiality [sic]:
>
> The expert witness will offer testimony on the following areas:
>
> - the process used during the mid-1980s for the submission of loan applications for the purchase or lease of automobiles;
>
> - the role of the assertions contained in a credit application (including income, assets and liabilities) in the assessment of the financial institution to make a loan for the purchase or lease of an automobile;
>
> - the role of the collateral in the assessment of the financial institution to make a loan for the purchase or lease of an automobile.

See Expert Summary, attached. This disclosure is so general it could serve for either the prosecution or the defense.

8

The purpose of expert disclosures by the defendant generally is to allow the Government to prepare for trial.  Except for Rule 12 disclosures, the purpose of Rule 16 is to provide notice, not an opportunity for discovery or for the Government to determine whether it may use its expert, since the time for the Government to identify an expert has passed.  Under all of these circumstances, a defendant is required to generally describe the manner in which its experts shall attack the Government's case.  A defendant is not required to create a competing, comprehensive accounting on a par with the Government's case.  United States v. Mehta, 236 F. Supp.2d 150, 156 (D. Mass., 2002).  In short, the Government is not entitled to the defendant's case, it is entitled to notice of a general area of the defense.  The notice provided by Mr. Rogers amply serves to inform an experienced prosecution of what may occur in the defense case.  To require more would be to presume a level of professional ignorance not found in the United States Attorney's Office in this jurisdiction.

To require further disclosures from Mr. Rogers runs afoul of the reasoning of Judge Gertner in the Mehta case.  In that case, the defendant's disclosure made clear that a defense expert would opine that an accountant failed to comply with appropriate standards of professional conduct.  Judge Gertner found that the defendant need only provide the Government with "a fair opportunity to test the merit of the expert testimony through focused cross-examination", 236 F. Supp.2d at 157, quoting from the Advisory Committee Notes to Rule 16.  The Advisory Committee was concerned that in the absence of advance discovery, the Government cross-examining an expert could unwittingly elicit prejudicial and inadmissible evidence.  There is no such danger here since the notices make clear that the experts shall rely upon evidence presented by the Government and the actual evidence presented to the jury by

both sides.  To require more would be "grossly incongruent and inequitable," in the words of Judge Gertner.

**II.	Rule 12.2 Disclosure for Lanning E. Moldauer, Ph.D.**

The Government misapprehends the Rule 12.2 requirements.  Mr. Rogers has provided notice as to Dr. Moldauer's opinions under Rule 12.2(b) provides that "If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt . . . the defendant must . . . notify an attorney for the government in writing of this intention. . . ."  The Government contends that the notice as to Dr. Moldauer is "meaningless as it lacked any diagnostic description and, more importantly, any professional documentation."

Rule 12.2(b) requires neither a diagnosis nor professional documentation.  The Rule pertains not only to diagnostic matters but also to "any other mental condition of the defendant."  Evidence of general mental capacity and history is admissible where the charged offense include an element of specific intent, as is the case with a scheme to defraud.  United States of America v. Childress, 58 F.3d 693, 730 (D.C. Cir. 1995).   The Advisory Committee Notes to the 1983 Amendment of Rule 12.2(b) make clear that a variety of mental states which do not constitute an identified diagnosis are admissible to negate the element of specific intent of the crime charged.  It is the position of several courts that expert testimony as to an element of the offense is not evidence "on the issue of guilt" as opposed to evidence simply contesting the Government's case. Mr. Rogers' contends that a Rule 12.2(b) notice is not even required as to Dr. Moldauer.

Moreover, the Government's motion presupposes facts which do not exist.  Dr. Moldauer did not see Mr. Rogers in connection with a plan to offer evidence at trial.  Present counsel did

not determine to call Dr. Moldauer at trial until shortly before the April 6, 2006, trial date. Therefore, the Government's contention that it has been sandbagged is misplaced. Moreover, the Government pretends that Dr. Moldauer must have performed tests, prepared reports, and formed a diagnosis of Mr. Rogers. If that were the case, such information would have been included in the notice. Nor is there any reason to believe that Dr. Moldauer prepared any "professional documentation" as the Government asserts. Had he done so, that would have been disclosed. In short, the Government complains of that which is not present in the Rule 12.2(b) notice. It is not present because as of the date of the notice none of it existed.

      The Government also has chosen the wrong vehicle in response to the Rule 12.2(b) notice: it has filed a motion to exclude the testimony. Under Rule 12.2(c)(1)(B) provides that "If the defendant provides notice under Rule 12.2(b), the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." The Government has not moved for such an order, wasting time if the Government is serious about contesting Dr. Moldauer's opinions. Moreover, a court-ordered examination would not be appropriate in this case in any event. Dr. Moldauer is not testifying that Mr. Rogers' is not responsible for the offense on the grounds of mental disease or defect. He is offered to rebut evidence of specific intent. This does not go to "the issue of guilt" and, therefore, does not merit a Government examination.

      The single case cited by the Government on this issue actually supports Mr. Rogers. In United States v. Buchbinder, 796 F.2d 910 (7th Cir. 1986), defense counsel had failed to provide notice of a mental health defense for almost three months on dates specifically set by the Court for such notice. More important to the analysis, however, is the fact that the conviction was only

saved from reversal because the trial judge had allowed other non-expert witnesses to present the mental health defense. From these witnesses, defense counsel was able to argue the mental health defense to the jury. Therefore, the Seventh Circuit was able to conclude that the trial judge did not abuse his discretion on excluding the experts. The Court of Appeals did say, contrary to the Government's motion, that "Rule 12.2(b) does not require [a defendant] to specify the 'exact mental disease' from which he is suffering." 796 F.2d at 915.

### III.  A Determination of Relevance is Premature.

The Government makes a half-hearted argument that the proposed expert testimony is irrelevant and confusing. This argument is premature. Requiring Mr. Rogers to further articulate his defense and the relevance of the proposed testimony before trial would, indeed, intrude upon his constitutional rights. Counsel for Mr. Rogers hopes that the Government does not repeatedly seek to have the defendant audition his evidence on the grounds of relevance.

WHEREFORE, defendant Reginald J. Rogers respectfully requests that the Government's Motion be denied.

Respectfully submitted,

HANNON LAW GROUP, LLP


*//s// J. Michael Hannon*
J. Michael Hannon, #352526
1901 18th Street, N.W.
Washington, DC 20009
(202) 232-1907
(202) 232-3704 (facsimile)
jhannon@hannonlawgroup.com

*Attorneys for Defendant Reginald Jerome Rogers*


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing **DEFENDANT'S OPPOSITION TO MOTION TO EXCLUDE EXPERTS** was sent via electronic filing this 22nd day of June, 2006, to:

John D. Griffith
UNITED STATES ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-2304 Facsimile



*//s// J. Michael Hannon*
J. Michael Hannon