# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 05-292 (RWR)** |
| | : | |
| | : | |
| **V.** | : | |
| | : | |
| | : | |
| **REGINALD JEROME ROGERS** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S REPLY TO DEFENDANT'S
## OPPOSITION MOTION TO EXCLUDE EXPERT TESTIMONY

The United States, by and through its attorney, the United States Attorney for the District of Columbia, replies to Defendant's Opposition to the Government's Motion to Exclude Expert Testimony. The defendant's Opposition offers no excuse regarding the untimeliness of his deficient expert witness "notice," claims that he was not required to provide the Court and the government with any notice pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure regarding his proposed expert testimony relating to the defendant's *mens rea*, claims that his untimely notice was sufficient to allow the government to prepare for trial, and that a determination of relevance of the expert testimony is premature. The government submits that the defendant's arguments are not supportable and move the Court to exclude the proffered expert testimony pursuant to the Federal Rules of Criminal Procedure.[1]

---

[1] The government will file in conjunction with this Reply, a Motion in Limine to Exclude Defendant's Expert Testimony. The Motion in Limine will address the government's arguments relating to the admissibility of the defendant's proffered expert testimony pursuant to the Federal Rules of Evidence.

1

I.      **Argument**

      A.      **Defendant's Expert Notice is Untimely and Insufficient to
              Allow The Government to Prepare for Trial.**

    As an excuse for his untimely and insufficient expert witness "notice," the defendant

contends that he "is not required to create a competing, comprehensive accounting on a par with

the Government's case" – a proposition put forth on the basis of a single district court case from

Massachusetts.[2] *Opp. Br. at 9.* Contrary to the defendant's assertion, the Federal Rules of

Criminal Procedure and a wide variety of circuits *do* require more than the bare bones "notice"

provided by the defendant for Ms. Sampeck, Mr. Varone and Dr. Moldauer, and those circuits

support the district courts' exclusion of expert witnesses when defendants fail to comply with the

requirements of Federal Rule of Criminal Procedure 16(b)(1)(C).[3]

    Rule 16 requires a written summary of "any" expert's testimony including the witness's

"opinions, the bases and reasons for those opinions, and the witness's qualifications" when the

government has complied with the defendant's request for such disclosure or the defendant has

given notice of intent to present expert witness testimony on the defendant's mental condition.

---

    [2] The defendant cites to *United States v. Mehta*, 236 F. Supp. 2d 150 (D. Mass. 2002) to
support his contention that his notice was adequate. In *Mehta*, the district court overruled a
magistrate judge's ruling requiring a defendant to disclose more information about his expert
accounting witness who analyzed defendant's bank account records. *Mehta* does not propose
that only providing the "general area" of testimony is sufficient notice by a defendant under Rule
16. It found that the defendant in that case did not need to meet the same standard of specific
disclosure as the government did for its expert. Further, in *Mehta*, the defendant provided a
curriculum vitae of his expert and supplied the methodology he used to support his accounting
testimony – more information than what the government has been provided in this case and in a
more limited area of testimony than Ms. Sampeck's opinions regarding elderly life care needs,
Mr. Varone's testimony as it relates to the "legal tools" used by attorneys for dealing with elderly
clients or opinions regarding the effect of relationships with elderly clients on an attorney.

    [3] The standard of review of a district court's decision to exclude expert testimony is
"abuse of discretion." *See* General Electric Company v. Joiner, 522 U.S. 135, 141 (1997).

2

Fed. R. Crim. P. 16(b)(1)(C). Here, the parties have satisfied both preconditions to Rule 16(b)(1)(C).[4] The rule – and its remedies for noncompliance – consequently apply.

Under Rule 16, courts have declined to allow defense expert witnesses to testify, regardless of the substance of their testimony, when disclosure of their opinions is untimely or insufficiently specific. For example, the Ninth Circuit rejected expert testimony for failure of the defendant to timely disclose the experts' qualifications and anticipated testimony. *See United States v. Thai*, 141 F.3d 1182 (9th Cir. 1998). The Seventh Circuit has held that "Rule [16] requires a summary of the expected testimony, not a list of topics." *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001); *see also United States v. Cross*, 113 F. Supp. 2d 1282, 1286 (S.D. Ind. 2000) (excluding defendant's expert witness because the defendant's disclosure failed to provide a curriculum vitae, show why the witness was an expert, describe the bases for his opinions, and only hinted at the substance of his testimony). Likewise, in a health care fraud prosecution, the Fourth Circuit excluded expert testimony both because the notice was untimely and insufficiently broad, comprising "only the general topics concerning which each proposed expert would testify" and neglecting to disclose "the witnesses' opinions or provide the bases and reasons for their opinions." *United States v. Concessi*, 2002 WL 1162339, 38 Fed. Appx. 866, 868 (4th Cir. 2002)(unpublished opinion). *See also United States v. Barile*, 286 F.3d 749, 758-59 (4th Cir. 2002) (excluding expert testimony in a fraud prosecution because defendant's expert notice "lacked specificity"). Despite the defendant's contention that the government "is [only]

---

[4] *See* Motion to Exclude Expert Testimony, Exhibit 2, at 3 (disclosing that the government does not plan to call expert witnesses but promising to notify defense counsel promptly with a CV and summary should this change) and Exhibit 6 (defendant's intention to put forth Dr. Moldauer's testimony on intent).

entitled to notice of a general area of the defense,"[5] these cases show that more than an untimely proffer as to the experts' area of testimony is required.

The defendant has not adequately complied with the multiple duties imposed by Rule 16(b)(1)(C). To date, he has provided the government with only one curriculum vitae for his proposed experts despite Rule 16(b)(1)(C)'s requirement that he must disclose his witnesses' qualifications.[6] Instead the defendant made conclusory assertions that "Ms. Sampeck is an expert in the life care needs of the elderly," and Mr. Varone is "a recognized expert in estate and probate planning and the duties of counsel in serving an elderly client population." *Opp. Br. at 5*. Such assertions provide the government with no ability to assess or evaluate the very propriety of Ms. Sampeck and Mr. Varone as experts.

Further, the defendant provided only "the general topics" or areas of testimony on which his experts intended to opine without disclosing any opinions they presumably hold. Without any sense of the *substance* of the defendant's experts' testimony on these broad topic areas, as Rule 16(b)(1)(C) requires, the government cannot prepare for cross-examination.[7] The government now has almost no time in which to determine what the experts' opinions are and whether the government will need to provide its own expert testimony to counter that of the defendant's experts. The government cannot have a "fair opportunity" to prepare its case when

---

[5] *Opp. Br. At 9.*

[6] On June 26, 2006, the government received Dr. Moldauer's curriculum vitae by e-mail.

[7] The defendant's refusal to comply with the requirements of Rule 16(b)(1)C) violates the very purpose of the Rule. The 1993 Advisory Committee commentary to Rule 16 indicates that section (b)(1)C) is "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."

defendant refuses even to provide a scintilla of information about what opinions the government

will be expected to encounter in only a week's time.  *Fed. R. Crim. P. 16 advisory committee's

note.*

### B.    Defendant's Rule 12.2(b) Disclosure for Dr. Moldauer Is Insufficient

The defendant attempts to justify his late and inadequate expert notice regarding Dr.

Moldauer's proposed testimony by claiming that he is not required to provide the Court and the

government with notice of that expert's opinions, bases and qualifications.[8]  Indeed, the

defendant states that "a Rule 12.2(b) notice is not even required as to Dr. Moldauer" because Dr.

Moldauer's testimony does "not relate to [the defendant's] guilt," and therefore, Rule 12.2 does

not apply.  *Opp. Br. at 10.*  This claim is incorrect.

Federal Rule of Criminal Procedure 12.2(b) makes clear that where a defendant intends

to offer expert testimony related to a mental condition, the defendant is required to provide

adequate notice within the period set aside for pre-trial motions.  The Rule exists to prohibit a

defendant from strategically springing evidence of a defendant's mental condition on the Court

and government at the last minute.  As noted in the government's motion, the defendant's feeble

expert notification relating to Dr. Moldauer's proposed testimony appears to be purposefully

untimely and insufficient.[9]

The defendant is charged with thirteen counts of mail fraud related to his systematic

scheme to use his position as a lawyer to defraud his elderly clients out of their life savings.  He

---

[8]  To date, the defendant has not filed the "notice" with the Court as required by Rule
12.2.

[9]  The defendant admits in his Opposition that he determined he would proffer Dr.
Moldauer as an expert witness in this case at the time of the first trial, but failed to notify the
government in writing until June 12, 2006.  *Opp. Br. at 11.*

did this in a number of different ways.  For example, after he obtained power of attorney over one elderly client's finances, the defendant then used her money to pay his more than $8,000 American Express bill.[10]  Given that the defendant confessed to agents to taking approximately $150,000 of another client's money for his own use, his specific intent is "the issue" that will determine the defendant's guilt in this case.  The specific intent the government must prove for the thirteen counts of mail fraud is the defendant's "intent to defraud."[11]  It is impossible to separate the defendant's intent to defraud from his guilt.  To follow the defendant's logic-- that Rule 12.2 notification only applies when the testimony relates specifically to the defendant's guilt and not simply as it relates to an element of the offense-- would mean that expert notice would never be required since an expert should never be allowed to testify regarding the ultimate issue of guilt.  *See Fed. R. Evid. 704*.  The Advisory Committee Notes to 1983 Amendment to Rule 12.2(b), referenced by the defendant, make clear that 12.2(b) extends to situations in where a psychiatric expert "testifies for the defendant regarding his diminished capacity." *Fed. R. Crim. P. 12.2(b) advisory committee's notes*.

The defendant fails to cite any authority for the assertion that '[i]t is the position of several courts that expert testimony as to an element of the offense is not evidence "on the issue of guilt" as opposed to evidence simply contesting the Government's case.' *Opp. Br. at 10.*  The

---

[10]  At least three clients' money was used to pay the defendant's personal American Express bills.

[11]  The elements of mail fraud are: (1) that defendant devised a scheme or plan to defraud or obtain money or property by means of materially false or fraudulent pretenses, representations or promises; (2) that defendant did so with intent to defraud; and (3) that defendant used the mails or a commercial interstate carrier ("carrier") or caused the mails or carrier to be used to advance, further, or carry out the scheme or plan.  A "scheme or plan to defraud" includes a scheme or plan to deprive another of the intangible right of honest services.  *Adapted from Fifth Circuit,* Pattern Jury Instructions *(1997 ed.), Section 2.60 (modified).*

government is unaware of any such case. To the contrary, the following cases required 12.2(b)

notice under circumstances similar to those in this case: *United States v. Cervone*, 907 F.2d 332,

345 (2nd Cir. 1990) (defendant asserting medical condition and medications impacted his short-

term memory required to provide notice of expert testimony under Rule 12.2(b)); *United States v.*

*Fazzini*, 871 F.2d 635, 640-641 (7th Cir. 1989) (defendant asserting that alcohol-induced

unconsciousness negated his ability to form the requisite intent for the crime charged is obliged

to give government notice of expert testimony under Rule 12.2(b)); *United States v. Buchbinder*,

796 F.2d 910, 914 (7th Cir. 1986) (defendant arguing that compulsive gambling prohibited him

from forming the intent to steal is required to provide timely notice of expert testimony under

Rule 12.2(b)); *United States v. Olson*, 576 F.2d 1267, 1273 (8th Cir. 1978) (defendant planning

to introduce expert testimony as to the impact of alcoholism on his ability to form intent is

required to provide notice under 12.2(b)); and *United States v. Edwards*, 90 F.R.D. 391, 393

(E.D.Va. 1981) (defense that defendant lacked the intellectual capacity to enable him to act

knowingly or willfully requires notice under 12.2(b)).

 The government acknowledges that Rule 12.2(b) does not specifically require disclosure

of the actual diagnosis of the mental condition that the expert expects to testify to. However, in

2002, Congress amended Federal Rule of Criminal Procedure 16 to specifically require that a

defendant, at the government's request, provide a written summary that describes the witness's

opinions, the bases and reasons for those opinions, and the witness's qualifications. Through this

language, Congress intended to require defendants to amplify their Rule 12.2(b) disclosures,

which do not require such descriptions. As a result, if a mental health professional has an

opinion that a defendant suffers from a mental condition or state of mind that precludes his

ability to form specific intent, the Rules require disclosure of that mental condition or state of

mind.  To hold otherwise would render the purpose behind the Rules  meaningless.

Even before Congress amended Rule 16, the courts understood the need for appropriate disclosure.  "One of the reasons that Congress enacted Rule 12.2(b) was to enable the government to prepare for cross-examination of the defendant's expert witnesses and to present any rebuttal witnesses to counter the defense expert's testimony." *United States v. Buchbinder*, 796 F.2d 910, 914 (7th Cir. 1986) (citing Conference Committee Notes, H.R. 94-414, 1983 amendment to Rule 12.2(b)).  Given the defendant's refusal to provide the Court and the government with any information regarding his alleged mental condition which purportedly precluded his ability to form the intent to defraud, the government is unable to determine what type of expert to consult, whether that be an addiction specialist, medical doctor or priest.[12]  As the Court in *Buchbinder* appropriately stated, "[o]bviously, the government cannot conduct its own investigation into the validity of the defense of lack of mental capacity and decide if it will present expert witnesses in rebuttal until such time as it has knowledge of the psychiatric and psychological evidence the defense intends to present."[13]  *Id. at 914.*

---

[12] The government notes that when the Defendant's witness list was submitted, the government had no knowledge of any mental condition of the defendant and still has no knowledge of any mental condition.  Moreover, given that the defendant also listed Dr. Mathur, HMG's physician as an expert, it speculated that the defendant would attempt to use Dr. Moldauer to opine on the competency of his elderly clients.

[13] While the Court has the discretion to require the defendant to submit to a mental examination pursuant to Rule 12.2(c)(1), the limited proffer provided by the defendant at this juncture does not give the government sufficient information to request an examination.  The Fed. R. Crim. P. advisory committee's note to Rule 12.2 state that subsection (c)(1), as amended "clarifies that the authority of a court to order a mental examination under Rule 12.2(c)(1)(B) extends to those cases when the defendant has provided notice, under Rule 12.2(b), of an intent to present expert testimony on the defendant's mental condition, either on the merits or at capital sentencing." Fed. R. Crim. P. 12.2(c) Advisory Committee Notes.  Rule 12.2(c)(1)(B) does not attempt to distinguish between the possible variations of how the defendant intends to use the evidence offered under Rule 12.2(b); instead it makes a blank rule that whenever a defendant

WHEREFORE, it is respectfully requested that the Court exclude the testimony of Kathleen Sampeck, Edward Varone, and Lanning Moldauer, Ph.D. for the reasons cited herein and its motion be granted.

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar #451058

_____
DIANE G. LUCAS, D.C. Bar #443610
JOHN D. GRIFFITH, Iowa Bar #4622
ASSISTANT UNITED STATES ATTORNEY
Fraud and Public Corruption Section
555 Fourth Street, N.W. Fifth Floor
Washington, D.C. 20530
(202) 514-8097 (Lucas)
(202) 353-2453 (Griffith)

---

files notice of intent under Rule 12.2(b), it is within the discretion of the court to order a mental examination.

CERTIFICATE OF SERVICE


I hereby certify that a copy of the foregoing motion was served by facsimile and mail upon defense counsel, J. Michael Hannon and Charles Cait, Esquires, 1901 18th St. N.W., Washington, D.C., 20009, FAX: 202-232-3704, on this 27th day of June, 2006.


_____
Diane G. Lucas