**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 05-292 (RWR)** |
| | : | |
| | : | |
| **V.** | : | |
| | : | |
| | : | |
| **REGINALD JEROME ROGERS** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION IN LIMINE**
**TO EXCLUDE EXPERT TESTIMONY**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, moves this Court to exclude defendant's expert testimony on relevance grounds pursuant to Rule 402 of the Federal Rules of Evidence. Further, the probative value of the proposed expert testimony is far outweighed by prejudice to the government and is further, likely to mislead the jury in violation of Federal Rule of Evidence 403. In addition, the proposed expert testimony concerning the defendant's *mens rea* fails to meet the standards of the Federal Rules of Evidence, specifically Rules 702, 403, and 704(b).

**I.     Introduction**

On June 14, 2006, the government filed a Motion to Exclude Expert Testimony pursuant to the Federal Rules of Criminal Procedure for the defendant's untimely and insufficient notice of proposed expert testimony.[1]  On  June 22, 2006, the defendant filed his Opposition to that Motion. *Document No. 58.*  On  June 27, 2006, the government filed its Reply to Defendant's

---

[1]  The background information and procedural history in the Motion to Exclude Expert Testimony are incorporated herein as if fully rewritten.  *See Document No. 57.*

Opposition to the Government's Motion to Exclude Expert Testimony. *Document No. 60.* In the event that the Court does not exclude the defendant's proffered expert testimony on procedural grounds, the government moves the Court to exclude the proposed expert testimony on evidentiary grounds. The government's Motion to Exclude Expert Testimony referenced the government's contention that the proposed expert testimony is not relevant or probative to the issues in this case. Furthermore, such evidence would be prejudicial to the government and confusing to the jury.

II.    **Argument**

A.    **Dr. Moldauer's Proposed Testimony Does Not Meet the Requirements of Federal Rules of Evidence 403, 702 and 704(b)**

The government submits that Dr. Moldauer's proffered testimony does not meet the evidentiary standards for admissibility and moves the Court to exercise its "gatekeeping" function to preclude the jury from hearing his testimony. Courts are in agreement that the trial court  must carefully review expert testimony relating to a defendant's mental condition outside the presence of the jury. "[T]he *Brawner* court recognized, '[t]he receipt of this expert testimony to negative the mental condition of specific intent requires careful administration by the judge . . . the judge may, and ordinarily would, require counsel first to make a proffer of the proof to be adduced outside the presence of the jury. The judge will then determine whether the testimony is grounded in sufficient scientific support to warrant its use in the courtroom, and whether it would aid the jury in reaching a decision on the ultimate issue.'" *United States v. Gold*, 661 F. Supp. 1127, 1130 (D.D.C. 1987), *citing United States v. Brawner*, 471 F.2d 969, 998 (D.C. Cir. 1972). 'In light of the strong danger of misuse, we join other circuits that have directed district courts to

examine proffered psychiatric testimony carefully "to determine whether the proof offered is

grounded in sufficient scientific support to warrant use in the courtroom, and whether it would

aid the jury in deciding the ultimate issues."' *United States v. Pohlot*, 827 F.2d 889, 905 (3rd Cir.

1987)(citations omitted).

The rule of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)

requires the judge to act as a "gatekeeper" to assure the reliability and relevance of expert

testimony.  Expert testimony is admissible if it will "assist the trier of fact to understand the

evidence or to determine a fact in issue." *Fed. R. Evid. 702.*  Where a defendant seeks to

introduce evidence concerning his mental condition short of insanity, this precedent requires that

the Court be assured that there is a "link or relationship between the specific psychiatric evidence

offered and the *mens rea* at issue in the case." *United States v. Childress*, 58 F.3d 693, 730 (D.C.

Cir. 1995)(citing cases).  This tight link is necessary to ensure that the defendant's evidence truly

negates specific intent, and does not merely excuse or mitigate the offense by establishing the

defendant's diminished responsibility. *Id.* at 728.

In *United States v. Pohlot*, 827 F.2d 889, 905-906 (3rd Cir. 1987), the court stated,

"District courts should admit evidence of mental abnormality on the issue of *mens rea* only

when, if believed, it would support a legally acceptable theory of lack of *mens rea*.  In deciding

such a question, courts should evaluate the testimony outside the presence of the jury."  To the

extent that expert testimony is either irrelevant to the defendant's ability to form the requisite

specific intent, or it's probative value is significantly outweighed by it's potential to prejudice,

confuse, or mislead the trier of fact, such evidence is inadmissible. *See Fed. R. Evid. 402, 403.*

Further, an expert witness may not opine or infer as to whether the defendant had the requisite

mental state or condition constituting an element of the alleged crime. *Fed. R. Evid. 704(b).*

Dr. Moldauer's proposed testimony as indicated in the defendant's "notice" and his Opposition to the Government's Motion to Exclude appears to violate each of the rules noted above and as a matter of law, his testimony provides no defense to mail fraud and thus cannot be submitted to the jury under the controlling law.

1.    **Dr. Moldauer's Testimony Lacks The Scientific Foundation and Nexus to the Defendant's Ability to Form The Intent to Defraud.**

The defendant proposes that Dr. Moldauer will testify about (a) the psychological impact of the defendant's interactions with his elderly clients, (b) his capacity to manage a solo legal practice in elder care law; (c) his opinion that, "Rogers never intended to cheat his clients, to harm them financially, or to gain financially at their expense;" and (d) the defendant's behavior in failing to respond to the criminal investigation, bar counsel proceedings and a civil law suit. *See Opp. Br. at 5.* Certainly, the defendant's proffer provides no expectation that Dr. Moldauer will testify that as a result of a mental condition, the defendant could not form the specific intent to defraud from 1998 to the present. Not only has Dr. Moldauer failed to form an opinion that the defendant suffered from a mental condition, but apparently has no basis to form his opinions other then the defendant's own self-serving statements. The defendant admits that Dr. Moldauer has not performed tests, prepared reports, formed a diagnosis, or prepared any other "professional documentation" in relation to the defendant.[2] *Opp. Br. at 11.* Thus, Dr. Moldauer's proffered

---

[2] The defendant's proffer that Dr. Moldauer and his other experts will form their opinions as they listen to the trial does not comply with the Rules and their testimony should be excluded.

testimony could not survive under *Daubert* and Rule 702 of the Federal Rules of Evidence.[3]

Rule 702 requires expert testimony to be based on sufficient facts or data, to be the product of reliable principles and methods, and that the witness applied such principles and methods reliably to the facts of the case. *Fed. R. Evid. 702.* Where a defendant proffers evidence that he "was 'incapable' of forming the intent necessary for the crime charged, most often that defendant is speaking of an incapacity to reflect or control the behaviors that produced the criminal conduct. Such evidence is not 'psychiatric evidence to negate specific intent' and should not be admitted." *United States v. Peralta*, 930 F. Supp. 1523, 1531-33 (S.D. Fla. 1996)(citation omitted). Here, the defendant has supplied no basis for his psychologist to opine regarding the proffered expert testimony other than the defendant's statements to him. The government submits that such a basis is not reliable or considered adequate.

Assuming arguendo that Dr. Moldauer's testimony meets the "reliable foundation" requirements of *Daubert* and Rule 702, the defendant provides no evidence as to how Dr. Moldauer's testimony meets the scientific nexus requirements. Fed. R. Evid. 702 requires a "valid scientific connection to the pertinent inquiry as a precondition to admissibility." *United States v. Boykoff*, 186 F.Supp.2d 347, 349 (S.D.N.Y. 2002) (quoting *Daubert*, 509 U.S. at 591-92). Courts have refused to admit evidence regarding a defendant's mental condition where no direct link could be established between the mental condition and the specific intent at issue. *Boykoff*, 186 F.Supp.2d at 349 (citing *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir.

---

[3] In the event the Court does not exclude Dr. Moldauer's testimony based on the government's Motion to Exclude Expert Testimony and the Motion in Limine, the government would move for a pre-trial *Daubert* hearing for the Court to determine the admissibility of Dr. Moldauer's testimony.

1990).  In *United States v. Cameron*, *supra*., the Eleventh Circuit found that expert testimony regarding the defendant's schizophrenia would "merely present a dangerously confusing theory of defense more akin to justification and excuse" as opposed to merely rebutting the government's proof of specific intent.  *Cameron* at 1067-68.  Likewise, In *United States v. Richards*, 9 F. Supp.2d 455, 459 (D.N.J. 1998), expert testimony of defendant's depression was excluded where the defendant failed to establish the requisite link between his mental condition and his alleged lack of specific intent to defraud or knowingly convert.  In *United States v. Brown*, 326 F.3d 1143 (10th Cir. 2003), the Tenth Circuit, also citing *Cameron*, held that the district court did not abuse its discretion in excluding expert testimony that the defendant suffered from post-traumatic stress disorder and chemical dependence because the "testimony reflected an improper justification defense or impermissible evidence of volition and did not establish a link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in this case.  The Third Circuit, using the standard adopted in *Cameron*, upheld the district court's exclusion of lay and expert diminished capacity evidence in *United States v. Pohlot*, 827 F.2d 889 (3rd Cir. 1987), *cert. denied*, 484 U.S. 1011 (1988).  In *Pohlot* the defendant proposed to show that he lacked the specific intent to conspire to kill his wife because he did not grasp the consequences of hiring someone to kill her.  The Court held that while the testimony may have shed light on the defendant's ability to consciously reflect on the consequences of his actions, it was excluded because it did not support a legally acceptable theory of lack of *mens rea*.  The Court stressed that "only in rare cases, however, will even a legally insane defendant actually lack the requisite *mens rea* purely because of mental defect." *Id*. at 890.  In addition, the Court noted that "only in the most extraordinary circumstances could a defendant actually lack

6

the capacity to form *mens rea* as it is normally understood in American law. Even the most psychiatrically ill have the capacity to form intentions, and the existence of intent usually satisfies any *mens rea* requirement." *Id*. at 903.

Factually, the case of *United States v. Mezvinsky*, 206 F. Supp. 661 (E.D. Pa. 2002) is closely on point to the case herein. There, as here, the defendant was charged with engaging in a multi-year fraud scheme. There, as here, the defendant attempted to avoid conviction by claiming an inability to form the intent to defraud. There, as here, none of the defendant's experts "[were] in a position to say that at any given time during the twelve-year history of the alleged scheme to defraud, that [the defendant] did not have a capacity to deceive." *Id.* at 671. The district court, invoking *Daubert* and Rule 403, excluded the defendant's testimony. This Court should likewise do the same. Judge Dalzell in *Mezvinsky* stated, "upon careful scrutiny, [the defendant's] proffered mental health defenses are founded upon a miasma of ifs, hypotheses and conjectures that have no relevance to the mental state [the defendant] disclaims for the twelve years at issue here. . . . In the end, the Insanity Defense Reform Act, *Pohlot*, and Rule 403 exist to prevent juries from being conned with impressive-sounding but irrelevant or misleading testimony such as that to which we [would be ] subjected here. This end does not 'abrogate [the defendant's] Constitutionally-protected right to trial by jury.' To the contrary, it assists the jury in its arduous task of finding the truth." *Id.* at 676.

None of the defendant's proffer regarding Dr. Moldauer's testimony links a mental condition to his inability to form the intent to defraud his clients. The "nature of the attorney-client relationship" that the defendant had with his clients, the "psychological impact of those relationships," and the defendant's "capacities as an attorney" do not describe a mental condition

7

or link to the defendant's ability to form the intent to defraud.  Moreover, Dr. Moldauer

testimony that the defendant "never intended to cheat his clients, to harm them financially, or to

gain financially at their expense" is not linked to a mental condition which rendered him unable

to form the specific intent to defraud his clients, time after time, client after client, over a multi-

year period, nor does it appear to address the scientific or medical bases for such assertions.

Rather the proffered testimony is merely Dr. Moldauer's opinion which is "more akin to

justification and excuse" for the defendant's acts of stealing his elderly clients' money--an

opinion which is inadmissible under Rule 704(b).

### 2.    The Potential to Prejudice, Confuse and Mislead The Jury Exceeds The Probative Value of Dr. Moldauer's Testimony

To be admissible, Dr. Moldauer's testimony must be relevant to the defendant's ability to

form the intent to defraud, and his testimony's probative value must not be "substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

*Federal Rule of Evidence* 403.  In *United States v. Mezvinsky*, 206 F.Supp.2d 661, 665 (E.D. Pa.

2002), the Court quoting *United States v. Bennett*, 29 F.Supp.2d 236, 240 (E.D. Pa. 1997), noted

that in the context of fraud, "[i]n order to have probative value as to *mens rea*, defendant's expert

testimony must relate to the particular misrepresentations attributed to him in the indictment.  If

his clinical condition and symptomology can be logically connected to his subjective belief that

his assertions were not false, baseless or reckless vis-a-vis the truth, such evidence is admissible

to show lack of *mens rea*."

The nature of the defendant's relationships with his clients and the psychological impact

on him, his capacity as an attorney to manage a solo practice as an elder law attorney, as well as

Dr. Moldauer's opinion on the defendant's behavior in failing to respond to the criminal investigation, bar counsel proceedings, and civil lawsuit, are irrelevant as they fail to specifically address or offer evidence as to the misrepresentations attributed to the defendant in the indictment or his inability to form the intent to defraud. The Defendant's sole purpose in introducing such testimony is to play on the jury's sympathies and distract from the issue at hand. Therefore, such testimony is inadmissible as it fails to meet both Rule 402 and Rule 403.

Arguably, Dr. Moldauer's proposed testimony as to the defendant's intent to defraud his clients meets the relevancy requirements under Rule 402. However, the proffered testimony is of such a general nature, failing to address specifically the defendant's ability to form the requisite intent over the entire period in question, that it's probative value is clearly exceeded by the likely prejudice and confusion such testimony would create.[4] In passing the Insanity Defense Reform Act [18 U.S.C. §17], the intent of Congress was to ensure that the insanity defense was "not improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a 'diminished responsibility' or some similarly asserted state of mind which would serve to excuse the offense, and open the door, once again, to needlessly confusing psychiatric testimony." *S. Rep. No. 98-225, 98th Cong., 2d Sess., at 229.* To allow the defendant to introduce such generalized expert testimony would violate both the spirit and intent of the Insanity Defense Reform Act. Consequently, all evidence Dr. Moldauer's testimony should be excluded.

---

[4] Judge Paul Friedman of this Court recently excluded expert testimony of a defendant's mental condition relating to *mens rea* after balancing the probative value of the expert testimony and the prejudicial effect it would have on the jury. *See United States v. Day*, 2006 WL 1216648 (D.D.C. 2006)(unpublished opinion).

9

**3.    Expert Testimony That Expressly Opines On Whether The Defendant Possessed The Requisite Intent To Commit Mail Fraud Is Not Admissible**

Federal Rule of Evidence 704(b) provides that an expert witness may not opine or infer as to whether the defendant had the requisite mental state or condition constituting an element of the alleged crime.  Here, the defendant offers Dr. Moldauer's opinions that "Mr. Rogers never intended to cheat his clients, to harm them financially, or to gain financially at their expense." *Opp. Br. at 5*.  The defendant proffers Dr. Moldauer to directly opine on the ultimate issue of the defendant's intent, in violation of Fed. R. Evid. 704(b).  In 1987, United States District Court Judge Joyce Hens Green interpreting such a rule held that the defendant would be allowed to offer testimony and evidence on the factual issue of defendant's mental state or condition during the time of the alleged crime, but would not be allowed to introduce testimony as to whether the defendant actually had the mental state or condition necessary to constitute an element of the crime.  *United States v. Gold*, 661 F. Supp. 1127, 1132 (D.C. Cir. 1987) ("defendant shall be allowed to introduce testimony and evidence otherwise admissible on the factual issue of defendant's mental state or condition during the relevant time, but defendant shall not be allowed to introduce testimony or evidence that proposes an opinion or inference as to whether defendant did or did not have the mental state or condition necessary to constitute and element of the crime").  *See also United States v. Bennet*, 161 F.3d 171, 183 (3rd Cir. 1998) (testimony that required expert to state expressly whether the defendant possessed the requisite intent to commit fraud was inadmissible).

In this case, the expected testimony of Dr. Moldauer includes an "expert" opinion as to the defendant's intent to defraud his clients.  Dr. Moldauer's opinions as to whether the

defendant intended to deceive his elderly clients violates Rule 704(b) and the District Court's

holding in *Gold* and are not admissible.

### B.    Ms. Sampeck's and Mr. Varone's Expert Testimony Is Prejudicial, Misleading and Confusing to the Jury

The very topics of Ms. Sampeck's and Mr. Varone's proffered expert testimony are not

appropriate subjects for expert testimony.  The defendant intends for Ms. Sampeck to testify to

four broad topics: "the life care needs of [HMG, MB, DL] and the life care needs of the elderly in

general," as well as "the costs associated with the life care needs of these clients of the defendant

and the psychological and medical benefits of these clients being sustained in their own homes."

*Opp Br. at 5.*  The life care needs of the elderly "in general" do not address the specific needs of

the defendant's clients on the facts of this case, and because such life needs would have no

bearing upon the determinative issues of this prosecution, it is irrelevant and thus not admissible.

*See Fed. R. Evid. 402.*  Similarly, the "psychological and medical benefits" of being maintained

in one's own home is not at issue in this case, nor does it bear upon any fact "of consequence to

the determination of the action" under Rule 401, so it, too, is irrelevant and therefore not

admissible.

Insofar as this case *does* address the life care needs of the defendant's clients, and the

"costs associated" with those needs, defendant has not shown that Ms. Sampeck is in any

position to evaluate what the "life care needs" of the defendant's clients during the period of

charged illegal conduct from 1998 to August 2005.  Even using her proposed bases of opinion[5]

---

[5]  The basis provided by the defendant for Ms. Sampeck's opinons are "her experience and training, her review [of] materials provided by the Government, her consideration of materials provided by defense counsel, and the actual evidence presented in Court."  *Opp. Br. at 5.*

Ms. Sampeck will not be able to make an expert determination of the "life care needs" of the defendant's clients during a period in which she cannot observe them. *Cf. Pate v. Robinson*, 383 U.S. 375, 386-87 (1966) (expressing the Supreme Court's repeated concerns over expert testimony of a person's condition years after the fact); *Abille v. United States*, 482 F. Supp. 703, 709 (N.D. Cal. 1980) ("The opinion of an expert witness reached solely on the basis of the available hospital records long after the fact is not a substitute for the contemporary professional judgment of the physician administering care to the patient on the scene."). Without an ability to make contemporaneous determinations of his clients' conditions, and consequently their associated costs, Ms. Sampeck is not in a position to opine with expert authority upon those conditions as they were; at best, her testimony would amount to speculation presented to the jury as expert authority.

The topics of Mr. Varone's testimony, too, are inappropriate subjects for expert testimony. The defendant proposes six topics on which Mr. Varone will opine with respect to the attorney-client relationship in elder law, two of which directly address the facts of this case: "the nature of the attorney-client relationship between the defendant and the alleged victims in this case" and "the procedures of Bar Counsel in supervising the ethical conduct of attorneys practicing in the field of elder law and in the case of the defendant in particular." *Opp. Br. at 5*. Mr. Varone's testimony is prejudicial because it provides expert testimony on a subject on which the Court has precluded the government from presenting–evidence about the investigation by the Board of Professional Responsibility. At its hearing on January 25, 2006, this Court ruled upon and facilitated redacting the September 17, 2002 and August 28, 2003 notices to defendant by the District of Columbia Bar to omit any findings of wrongdoing that would unfairly prejudice the

12

defense. *Tr. at 38.*  Defendant's then-counsel even stated at the time that the notices were "for many reasons prejudicial."[6]  Defendant has now reversed his position entirely.  He proposes to put to the jury an as-yet-unevaluated "expert" who will opine on the very subject which defendant sought to have excluded–the propriety of the defendant's conduct as it related to his clients.  Allowing a defense expert to address the very information the prosecution cannot present effectively precludes the government from rebutting that testimony.[7]

Federal Rule of Evidence 403 excludes even relevant evidence when its probative value is outweighed by "confusion of the issues" or "misleading the jury."  Accordingly, in a prosecution for laundering funds derived from wire fraud, two attorneys could not function as defense experts on the legality of a contract where their testimony was "a non-issue in the case" and where, even if it were relevant, a jury would have been confused by expert testimony on contract issues in a criminal case. *United States v. Petrie*, 302 F.3d 1280, 1286-87 (11th Cir. 2002). *See also United States v. Caputo*, 382 F. Supp. 2d 1045, 1049 (N.D. Ill. 2005) (noting, in a mail and wire fraud prosecution, that an expert witness "cannot offer an opinion that amounts to a legal conclusion...because such testimony is not helpful to the jury and because its probative value is substantially outweighed by the danger of unfair prejudice").  Like the excluded testimony in *Petrie*, Mr. Varone's testimony risks confusing the jury with complex and irrelevant information about the legal planning tools in elder law and would create the impression that Mr. Varone, and

---

[6]  Evidence of the proceedings, ". . . will confuse the jury.  They unnecessarily inject other adjudications, other hearings...into this trial. . . They relate to people who are not related to this case, which I think only further prejudices the defendant."  *Tr. at 27-28.*

[7]  If the Court allows Mr. Varone's testimony, the government submits it will open the door to the presentation of the entire proceedings before the Board of Professional Responsibility, including its findings and recommendations.

not the Court, is in the position to delineate an attorney's "professional duties."

Finally, Mr. Varone's testimony is inappropriate inasmuch as it usurps the Court's role to determine the law of the case. "An expert witness cannot offer an opinion on what the law requires or permits because the judge, not the witnesses, instructs the jury about the relevant law." *Caputo*, 382 F. Supp. 2d at 1049.  As this Circuit stated, "[e]ach courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Washington Metro. Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997).[8]  Mr. Varone's testimony similarly violates the Court's role in providing the relevant legal standard to the jury.[9]  Thus, Mr. Varone's testimony should be excluded.

---

[8]  In a prosecution for an illegal gambling business, an attorney was excluded as a defense expert because a lawyer could not testify to "purely legal matters." *United States v. Cross*, 113 F. Supp. 2d 1282, 1284 (S.D. Ind. 2000). Likewise, following a conviction for a conspiracy to defraud the Food and Drug Administration, the Fourth Circuit affirmed the district court's ruling that a proposed expert on industry standards could not "testify as to intent of the law, application of the law, and anything that is within the province of the jury." *United States v. Barile*, 286 F.3d 749, 758 (4th Cir. 2002).

[9]  See the Government's Motion in Limine for Judicial Notice.  *Document No. 59.*

WHEREFORE, it is respectfully requested that the Court exclude the testimony of

Kathleen Sampeck, Edward Varone, and Lanning Moldauer, Ph.D. and its motion be granted.


KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar #451058


_____
DIANE G. LUCAS, D.C. Bar #443610
JOHN D. GRIFFITH, Iowa Bar #4622
ASSISTANT UNITED STATES ATTORNEY
Fraud and Public Corruption Section
555 Fourth Street, N.W. Fifth Floor
Washington, D.C. 20530
(202) 514-8097 (Lucas)
(202)353-2453 (Griffith)

15

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served by facsimile and mail upon defense counsel, J. Michael Hannon, Esquire, 1901 18th St. N.W., Washington, D.C., 20009, FAX: 202-232-3704, on this 28th day of June, 2006.


_____

Diane G. Lucas

16