# HANNON LAW GROUP, LLP
## COUNSELORS AND ATTORNEYS AT LAW
1901 18TH STREET, NW
WASHINGTON, DC 20009

(202) 232-1907
FACSIMILE (202) 232-3704
www.hannonlawgroup.com
jhannon@hannonlawgroup.com

J. MICHAEL HANNON *

TREBIE A. VALANCIUS
ADMITTED ONLY IN VIRGINIA;
SUPERVISION BY J. MICHAEL HANNON, A
MEMBER OF THE DC BAR

* ALSO ADMITTED IN MARYLAND
+ ALSO ADMITTED IN VIRGINIA
• ALSO ADMITTED IN CALIFORNIA

OF COUNSEL

DONALD LEWIS WRIGHT
WILLIAM CLAYTON BATCHELOR*
+
CHARLES I. CATE •

June 23, 2006

**VIA ELECTRONIC TRANSMISSION ONLY**

John D. Griffith
Assistant United States Attorney
Judiciary Center
555 4th Street, N.W.
Washington, D.C. 20530

Re: U.S. v. Reginald J. Rogers, Crim. No. 05-cr-00292 RWR

Dear Mr. Griffith:

I promised to provide you some additional information as to our experts. Today, you and I along with Diane Lucas talked further about Lanning E. Moldauer, Ph.D. I understand that you want more information in order to determine whether to seek from the Court further discovery or an examination of Mr. Rogers. In our opposition to your motion, we did provide you additional information. I stated that Dr. Moldauer saw Mr. Rogers several times for reasons unrelated to the preparation of any mental health defense. Dr. Moldauer did not conduct any testing of Mr. Rogers, did not prepare any written report of any kind, did not form a diagnosis, and does not have any professional documentation of his opinions. To clarify, the following is the content of the original notice regarding Dr. Moldauer:

Lanning E. Moldauer, Ph.D.: Lanning E. Moldauer, Ph.D., is a practicing psychologist and recognized expert in evaluating psychological issues that impair attorneys' professional competence and performance. He has seen Mr. Rogers on several occasions since the initiation of this investigation. Dr. Moldauer will discuss the nature of the attorney-client relationship that Mr. Rogers established with Hattie Mae Goode, Minnie Beane, Danzel Lewis and others from the standpoint of the psychological impact of those relationships on Mr. Rogers. He will also opine on Mr. Rogers capacities as an attorney to manage a solo practice as an elder law attorney. Dr. Moldauer is of the opinion that Mr. Rogers never intended to cheat his clients, to harm them financially, or to gain financially at their expense. Dr. Moldauer may also opine as to the behavior of Mr. Rogers in failing to respond to the criminal investigation which initiated this prosecution, failing to respond to the various Bar Counsel proceedings against Mr. Rogers, and failing to respond to the civil law suit filed against Mr. Rogers by Hattie Mae Goode.

You asked how many times Mr. Rogers saw Dr. Moldauer, who paid the bill, who referred him to Dr. Moldauer, and whether Dr. Moldauer took notes. You also asked whether Dr. Moldauer interviewed any persons other than Mr. Rogers in forming his opinions. I will find out how many times Dr. Moldauer saw Mr. Rogers and whether he interviewed any other persons in forming his opinions. I told you that Dr. Moldauer took personal notes. I will not provide you with answers on the other issues. I will tell you that Dr. Moldauer will see Mr. Rogers at least one more time before he testifies. If any additional information is made available to Dr. Moldauer or which forms the basis of his opinions, I will report that to you. If Dr. Moldauer, as a result of additional information provided to him, reaches an opinion as to whether Mr. Rogers has a recognized mental health diagnosis, I will report that to you. Dr. Moldauer, since he saw Mr. Rogers, has been provided with a copy of the FBI 302 interview of Mr. Rogers and with a copy of the Indictment. I am attaching Dr. Moldauer's resume with this letter.

       To reiterate my views, since Dr. Moldauer will be presenting opinion testimony, the defense has an obligation to provide the information required under rule 16(b)(1)(C) for notice purposes. I do not concede that Dr. Moldauer's proposed testimony falls under Rule 12.2(b) because it goes to <u>mens rea</u> and not "the issue of guilt"; nevertheless, I have provided this information to you to afford the Government the opportunity to argue to the Court that the proposed testimony is 12.2(b) testimony so that the Government may consider requesting an examination from the Court. I would contest such a motion, should it be made by the Government. Neither Rule 16 nor Rule 12.2(b) requires a mental health expert to have a diagnosis in order for that opinion testimony to be admissible. Any further comment on Dr. Moldauer's testimony would require the disclosure of attorney-work product and trial strategy which is not required either under the Rules or the Constitution.

       As to Kathleen F. Sampeck, the original notice provided was as follows:

> <u>Kathleen F. Sampeck:</u>   Ms. Sampeck is an expert in the life care needs of the elderly. She will provide opinion testimony on the life care needs of Hattie Mae Goode, Minnie Beane, Danzel Lewis and the life care needs of the elderly in general. She will opine on the costs associated with the life care needs of these clients of Mr. Rogers and the psychological and medical benefits of these clients being sustained in their own homes. Ms. Sampeck shall base her opinions on her experience and training, her review of materials provided by the Government, her consideration of materials provided by defense counsel, and the actual evidence presented in Court.

       While you appear to have withdrawn your objection as to Ms. Sampeck, I can further report that Ms. Sampeck has not yet been provided specific documents. As you know, the Government has produced documents which describe the medical condition of the clients identified in the indictment, the nature and costs of home care and institutional care for those clients, and other documents which will allow Ms. Sampeck to opine on the value of the services provided to these clients by Mr. Rogers. In addition, Ms. Sampeck is eminently qualified to opine that elderly persons who are sustained in their own home enjoy higher levels of mental acuity and health, there being a non-monetary value associated with such care. Specifically, Ms. Sampeck will opine on the nature of the work and care provided to these clients by Mr. Rogers, its dollar value, its psychological value, and its health value. I will provide you with her resume as well.

       As to Edward G. Varone, again you appear to have withdrawn your objection, but for

clarification his original disclosure is as follows:

> Edward G. Varone: Mr. Varone is an attorney admitted to practice in the District of Columbia and Maryland. Mr. Varone practices elder law. He is a recognized expert in estate and probate planning and the duties of counsel in serving an elderly client population. Mr. Varone will opine on the nature of the attorney-client relationship with elderly clients, the life-planning tools available to the attorney, the obligations of the attorney to the client under various planning tools, and the professional duties that arise from the relationship. He will opine with respect to the nature of the attorney-client relationship between Mr. Rogers and the alleged victims in this case. He may also opine on the procedures of Bar Counsel in supervising the ethical conduct of attorneys practicing in the field of elder law and in the case of Mr. Rogers in particular. Mr. Varone shall base his opinions on his experience and training, his review of materials provided by the Government, his consideration of materials provided by defense counsel, and the actual evidence presented in Court.

Mr. Varone is sending me a current resume which I will forward upon receipt. To supplement this statement further, you should know that Mr. Varone has served as an expert in Bar Counsel proceedings. He teaches in the field of elder law, and practices elder law himself. Assuming that the Government's case survives a motion for directed verdict and assuming that the Court admits into evidence the rules of professional responsibility, Mr. Varone will discuss the nature of the rules and their application to Mr. Rogers and his clients. Mr. Varone will opine as to whether certain conduct of Mr. Rogers constitutes a departure from the rules of professional conduct. To date, Mr. Varone has been provided a copy of the FBI 302 Interview of Mr. Rogers, the Indictment, and the Report of the Hearing Committee.

Thank you for your courtesies.

Sincerely,

*//s// J. Michael Hannon //s//*

J. Michael Hannon