UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

JUL 1 7 2006

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 05-292 (RWR) |
| | ) | |
| REGINALD J. ROGERS | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The government has moved twice to exclude the expert
testimony of defense witnesses Lanning Moldauer, Ph.D, Kathleen
F. Sampeck, and Edward G. Varrone, Esq.  In its original motion,
the government moves to exclude these witnesses under Federal
Rules of Criminal Procedure 12.2(d) and 16(d)(2).  In its second
motion, the government argues, in the alternative, that the
proposed expert testimony is not relevant.

The defense appears to be that (1) Rogers did not intend to
defraud, he took only what money he thought he was entitled to,
and only when he thought he was entitled to take it, and (2) that
he was overwhelmed and disorganized and may not have been
accurate in keeping track of how much that was, and the value of
his legal and non-legal services approaches the government's
figure anyway.

I.   LANNING MOLDAUER

Moldauer is a psychologist whom Rogers would call to testify
to Rogers' predispositions based on his history and life

- 2 -

experiences, his capacity to function as a sole practitioner and
to fulfill the obligations - - legal and otherwise - - of his
elder clients, and his responses to the allegations of this
criminal case and other investigations.

Moldauer would opine that because of Rogers' reported family
history, upbringing and life experiences and his religious
training, (1) Rogers was predisposed to attract and serve as
clients elderly people in the predominantly African-American
community in which he and his family live and worship; (2) Rogers
was predisposed to be particularly empathetic to the condition
and needs of elderly clients, particularly women; (3) Rogers was
predisposed to take on inordinate responsibilities for his
elderly clients, and to undertake sole responsibility for their
care and to allow his duty to fulfill those responsibilities to
overcome his capacities to care for a business and his own family
matters; and (4) Rogers allowed himself to be expropriated by
some of his elderly clients - - particularly Hattie Mae Goode and
Minnie Beane - - as their surrogate son, putting severe pressures
on Rogers to fulfill their obligations.  (Def.'s Supp. Notice of
Expert Testimony at 1-2.)

Moldauer would also testify that (5) because of crises in
Rogers' personal life, including his wife's illness and his son's
disabilities, Rogers' capacity to function as a sole practitioner
was strained and he was incapable of attending to the

- 3 -

administrative details of a sole, elder care practice; and that
(6) Rogers was unable to take a detached view of his role with
his clients, took on matters beyond his capacities to deal with
as an attorney, and took on matters that other attorneys would
shun. (Id. at 2.)  Finally, Moldauer would opine that (7) Rogers
became paralyzed in dealing with the allegations of this criminal
case, the allegations of Bar Counsel, and the allegations in the
civil suit brought by Goode and he did not respond appropriately.
(Id.)[1]

His opinions were reached after conducting seven therapeutic
interviews of Rogers, reviewing the indictment and discovery in
this case, and discussing the case with Rogers' counsel.

A.   Rule 12.2 Notice

Federal Rule of Criminal Procedure 12.2(b) provides, in
part:

> If a defendant intends to introduce expert evidence
> relating to a mental disease or defect or any other
> mental condition of the defendant bearing on . . . the
> issue of guilt . . . the defendant must - - within the
> time provided for filing a pretrial motion or at any
> later time the court sets - - notify an attorney for
> the government in writing of this intention and file a
> copy of the notice with the clerk.  The court may, for
> good cause, allow the defendant to file the notice
> late, grant the parties additional trial-preparation
> time, or make other appropriate orders.

Fed. R. Crim. P. 12.2(b).

---

[1]   The defense has been precluded already from eliciting
Moldauer's opinion that the defendant did not intend to defraud
his clients.

- 4 -

Notice under Rule 12.2(b) is "intended to deal with the
issue of expert testimony bearing upon the issue of whether the
defendant had the 'mental state required for the offense
charged.'"   Fed. R. Crim. P. 12.2 Advisory Committee Notes.
Therefore, notice should be required under Rule 12.2 "in all
circumstances in which the defendant plans to offer expert
testimony concerning his mental condition at the time of the
crime charged" because such notice prevents surprise and delay
during trial and allows for adequate pretrial preparation.   Id.

Here, the government did receive notice, in the form of a
June 12, 2006 letter, that the defense would be calling Moldauer
to opine, among other things, that "Rogers never intended to
cheat his clients."   (See Gov't 1st Mot. to Exclude Expert
Testimony, Ex. 6 June 12, 2006 letter.)   The government argues
that this notice is untimely and insufficient because it does not
contain "any diagnostic description" or any "professional
documentation."   (Id. at 9.)   The government later concedes,
however, that Rule 12.2(b) does not require the disclosure of the
medical diagnosis.   (Gov't Reply at 7.)   The content of
defendant's notice, therefore, is sufficient.

The defendant's notice of June 12, 2006 was, however,
untimely.   On August 8, 2005, the pretrial motions deadline was
set as August 18, 2005.   On August 19, 2005, the motions deadline
was extended to October 10, 2005, and on October 12, 2005, the

motions deadline was extended to December 20, 2005. The defense
offers no reason why the notice was filed over 5 months after the
deadline and even 67 days after the case was first set for trial
on April 6, 2006. The government claims prejudice by the late
notice. It asserts it has been deprived of sufficient time to
engage its own expert to prepare cross-examination or rebuttal
testimony, and the defense has not established otherwise. The
purpose of the Rule 12.2 notice is to allow for appropriate
preparation, and the defendant's late notice does not fulfill
this notice requirement.

B.   <u>Rule 16 Notice</u>

Federal Rule of Criminal Procedure 16(b)(1)(C) provides, in
part:

> The defendant must, at the government's request, give to the
> government a written summary of any testimony that the
> defendant intends to use under Rules 702, 703, or 705 of the
> Federal Rules of Evidence as evidence at trial, if--
>> (i) the defendant requests disclosure under subdivision
>> (a)(1)(G) and the government complies; or
>> (ii) the defendant has given notice under Rule 12.2(b)
>> of an intent to present expert testimony on the
>> defendant's mental condition.
> This summary must describe the witness's opinions, the bases
> and reasons for those opinions, and the witness's
> qualifications.

Fed. R. Crim. P. 16(b)(1)(C). "If a party fails to comply with
this rule, the court may: (A) order that party to permit the
discovery or inspection; specify its time, place, and manner; and
prescribe other just terms and conditions; (B) grant a
continuance; (C) prohibit that party from introducing the

- 6 -

undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16 (d)(2).

"Rule 16(b)(1)(C) requires nothing more" than allowing the government "a fair opportunity to test the merit of the expert's testimony through focused cross-examination." United States v. Mehta, 236 F. Supp. 2d 150, 157 (D. Mass. 2002) (finding notice of expert testimony under Rule 16 proper where the "expert's testimony may expand somewhat on the description of the misconduct provided in these letters and will likely offer a more nuanced analysis, but it is surely not going to take the government by surprise") (quoting Fed. R. Crim. P. 16 Advisory Committee Notes, 1993 Amendment).

A party sufficiently states an expert's basis for his testimony by noting the experts' education, training and experience and attaching a resume. See, e.g., United States v. Duvall, 272 F.3d 825, 828 n.1 (7th Cir. 2001) (holding that stating that the basis of the expert's testimony will be the experts' "education, training and experience" with the police force and the DEA and attaching his resume was sufficient notice).

Rule 16 does require a sufficient summary of the expert's testimony, and not simply a list of testimony topics. See, e.g., id. at 828 (holding that a Rule 16 statement was insufficient where it stated that the expert "will identify code language, the

- 7 -

manner in which methamphetamine is distributed, tools of the
trade in the distribution of methamphetamine, street prices of
methamphetamine and the manner in which 'cut' is added to
methamphetamine to increase the amount of profit in the
methamphetamine business [and] testify concerning amounts of
methamphetamine an individual might have for distribution, as
opposed to personal use"); United States v. Cross, 113 F. Supp.
2d 1282, 1286 (S.D. Ind. 2000) (holding that expert notice under
Rule 16 was insufficient where it failed to provide the
"curriculum vitae for [the expert], fails to show why he should
be qualified as an expert - whether through knowledge, skill,
education, experience, etc. - wholly fails to describe the bases
and reasons for his opinions, and offers only a hint of his
anticipated testimony"); United States v. Concessi, 38 Fed.
Appx. 866, 868 (4th Cir. 2002) (upholding the district courts'
exclusion of the defendant's experts' testimony where the
defendant failed "to describe the witnesses['] opinions or
provide the bases and reasons for the witnesses' opinions").  The
purpose of the summary is to "inform the requesting party whether
the expert will be providing only background information on a
particular issue or whether the witness will actually offer an
opinion."  Fed. R. Crim. P. 16 Advisory Committee Notes, 1993
Amendment.

- 8 -

In his first submission, the defendant offered only the topics on which Moldauer would testify and that he would offer an opinion, but did not state the actual conclusion to which he would testify. (<u>See</u> Gov't 1st Mot. to Exclude Expert Testimony, at 4; Ex. 6 June 12, 2006 letter.)  This type of summary was insufficient under Rule 16, since it did not "describe the witness's opinion" as required under the Rule.  The defendant supplemented the notice on July 5, 2006, on the eve of trial, and provided the opinions to which Moldauer would testify.  Because the defendant has now also provided the government with a curriculum vitae for each expert (<u>see</u> Def.'s Supp. Memo. [64] at 3 n.1), the defendant's disclosures, though tardy, are now sufficient under Rule 16 as to qualifications, the basis of Moldauer's testimony and the substance of his opinions.

C.    <u>Daubert standards and relevance</u>

The government also argues that Moldauer's testimony is not relevant and that it does not meet the requirements of Federal Rules of Evidence 403, 702 and 704(b).  (Gov't 2d Mot. to Exclude Expert Testimony at 2.)

"Under <u>Daubert</u>, the district court is required to address two questions, first whether the expert's testimony is based on 'scientific knowledge,' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'"  <u>Meister v. Med. Eng'g Corp.</u>, 267 F.3d 1123, 1126-1127

- 9 -

(D.C. Cir. 2001). Judge Urbina has summarized the law on whether the expert testimony is based on scientific knowledge:

"Expert testimony is admissible 'if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.' Fed. R. Evid. 702. A witness may qualify as an expert through knowledge, skill, experience, training, or education. Id. Rule 702 requires trial courts to act as 'gatekeepers' to ensure that the methodology underlying the expert testimony is valid and the expert's conclusion is based on 'good grounds.' Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590 (1993); see also Meister v. Med. Eng'g Corp., 267 F.3d 1123, 1127 (D.C. Cir. 2001).

The trial court's gatekeeping obligation applies not only to scientific testimony but to all expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148 (1999). Trial courts may apply several factors in assessing reliability, such as (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. Daubert, 509 U.S. at 593-94. These factors are neither exclusive nor dispositive, and their application depends on the particular facts of each case. Kumho Tire Co., 526 U.S. at 150.

In matters where these factors do not apply, reliability concerns may focus on personal knowledge or experience. Id. at 149. The gatekeeping inquiry is 'flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.' Id. at 142; see also Gen. Electric Co. v. Joiner, 522 U.S. 136, 143 (1997). The inquiry must focus on principles and methodology rather than on the conclusions they generate. Daubert, 509 U.S. at 595; Ambrosini v. Labarraque, 101 F.3d 129, 140 (D.C. Cir. 1996); Raynor v. Merrell Pharm. Inc., 104 F.3d 1371, 1375 (D.C. Cir. 1997). Trial courts must

- 10 -

> make certain that an expert 'employs in the courtroom
> the same level of intellectual rigor that characterizes
> the practice of an expert in the relevant field.'
> Kumho Tire Co., 526 U.S. at 152, 119 S. Ct. 1167.
> Expert testimony that rests solely on 'subjective
> belief or unsupported speculation' is not reliable.
> Daubert, 509 U.S. at 590.  A court may refuse to admit
> expert testimony if it concludes that 'there is simply
> too great an analytical gap between the data and the
> opinion proffered.'  Gen. Electric Co., 522 U.S.
> at 146.

Groobert v. Georgetown College, 219 F. Supp. 2d 1, 6 (D.D.C.

2001).

The evidence must also be such that it will assist the trier

of fact to understand the evidence or resolve a disputed fact.

Fed. R. Evid. 702.  Under this helpfulness inquiry, the court

must determine that there is a "link or relationship between the

specific psychiatric evidence offered and the mens rea at issue

in the case."  United States v. Childress, 58 F.3d 693, 730 (D.C.

Cir. 1995) (noting that "[w]hile [the defendant's] mental

capacity does not 'excuse' him from culpability for his activity

. . . it may well be relevant to whether the government proved an

element of" the crime).  The defendant must "explain a link

between the evidence sought to be introduced and the mens rea in

dispute."  United States v. Boykoff, 186 F. Supp. 2d 347, 349

(S.D.N.Y. 2002).

After several requests by the court for support under

Daubert standards for the admissibility of Moldauer's opinion

testimony, the defendant has presented no factual evidence about

standards Moldauer applied to make his assessments, how they are

subject to verification or review, why they are reliable, or the known or potential rate of error in employing his assessment methods.  Based upon what is in the record to date, Moldauer's opinion testimony about the defendant's capacity and being overwhelmed in his work can be said to be little more than repeating what the defendant said in interviews and saying that Moldauer believes the defendant.

The opinion about the defendant's susceptibility to over-extending himself to the elderly may suffer from the same shortcomings and may be of even less relevance.  So, too, would Moldauer's testimony about the defendant's reaction to the criminal and Bar Counsel investigations and the civil suit.  The defense has not demonstrated a sufficient link between the psychological opinions offered and the specific intent element of the crime to make the evidence helpful to the jury or sufficiently relevant.  Although psychological evidence can be used to negate specific intent, Moldauer's opinions do not address Rogers' specific intent in the actions that allegedly defrauded his victims, but instead focus on his predispositions based on his family history and life experiences and his capacity to function as an elder law attorney.  (See Def.'s Supp. Notice of Expert Testimony ¶¶ 1, 2, 3, 5 & 6.)  The indictment alleges that Rogers did deceive when he promised to preserve his clients' retirement funds, when he promised that he was charging no fee or

- 12 -

low fees for service while taking large amounts from them, when
he claimed that a low balance was a bank error when in fact it
accurately reflected the balance after his withdrawals, and when
he made false expense reports to the Orphan's Court.

The elements of mail fraud include (1) that defendant
devised a scheme or plan to defraud or obtain money or property
by means of materially false or fraudulent pretenses,
representations or promises; (2) that defendant did so with
intent to defraud; and (3) that defendant used the mails or a
commercial interstate carrier or caused the mails or carrier to
be used to advance, further, or carry out the scheme or plan.
See O'Malley, Federal Jury Practice and Instructions Section
47.02 (5th ed. 2000). The second element - - intent to defraud
- - requires a showing of specific intent, which the defendant
can negate. Such "evidence is admitted not as an affirmative
defense to excuse the defendant from responsibility for his acts,
but to negate specific intent when that is an element of the
charged act itself." See Childress, 58 F.3d at 728. "In order
to have probative value as to mens rea, defendant's expert
testimony must relate to the particular misrepresentations
attributed to him in the indictment." See, e.g., United States
v. Bennett, 29 F. Supp. 2d 236, 240 (E.D. Pa. 1997). Because
mail fraud requires a showing of the "intention to deceive a
person," the defendant's "mens rea defense, therefore, must be

- 13 -

probative as to whether he had the mental capacity to form such
an intention over the . . . course of his alleged [scheme] to
defraud." United States v. Mezvinsky, 206 F. Supp. 2d 661, 668
(E.D. Pa. 2002).

Even where evidence of a mental state is relevant to negate
an element of specific intent, the court must not admit evidence
that would cause undue prejudice or confusion.  Rule 403 provides
that "[a]lthough relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the
jury[.]"  Fed. R. Evid. 403.

"[C]oncerns about whether the evidence is relevant to negate
specific intent as opposed to presenting a dangerously confusing
theory of defense more akin to justification and excuse are best
addressed through the district court's assessment of the
reliability and probity of the evidence and its careful
administration of that evidence."  Childress, 58 F.3d at 730
(internal quotation marks omitted).  Courts may exclude relevant
psychiatric evidence under Rule 403 "[b]ecause psychiatric
evidence (1) will only rarely negate specific intent, (2)
presents an inherent danger that it will distract the jury's from
focusing on the actual presence or absence of mens rea, and (3)
'may easily slide into wider usage that opens up the jury to
theories of defense more akin to justification.'"  United States

- 14 -

v. Cameron, 907 F.2d 1051, 1067 (11th Cir. 1990) (quoting United
States v. Pohlot, 827 F.2d 889, 905 (3rd Cir. 1987) (noting that
psychiatric evidence has a "strong danger of misuse")); see also
Mezvinsky, 206 F. Supp. 2d at 666 (excluding "the expert
testimony offered here [because it] could easily mislead the jury
into thinking that such a medical condition amounts to temporary
insanity or ameliorates the offense").

    In the Insanity Defense Reform Act ("IDRA"), 18 U.S.C. § 17,
"Congress intended . . . to . . . limit the scope of expert
psychiatric testimony on ultimate legal issues, and . . .
carefully control the use of inherently malleable psychiatric
evidence so that juries hear only evidence of a legally
acceptable theory of lack of mens rea." Cameron, 907 F.2d
at 1066 n.29 (internal quotation marks omitted).

    Here, Moldauer's opinions concerning Rogers' capacity and
susceptibility could easily mislead the jury into exactly the
kind of diminished capacity defense that the IDRA sought to
forbid, and that risk substantially outweighs the testimony's
limited relevance.  This is especially so since the testimony
does not establish an inability to deceive, the nub of a mens rea
defense here.  It may well be that Rogers was working beyond
capacity, but that goes no distance toward negating the
proposition that he could and did intentionally make the

- 15 -

affirmative misrepresentations alleged in the indictment with the
intent to deceive.

Because notice of Rogers' mental condition defense was
prejudicially untimely, support for admission of Moldauer's
expert opinion testimony under <u>Daubert</u> is insufficient, and his
testimony has limited probative value regarding the defendant's
mens rea and a high danger of confusing or misleading the jury,
Moldauer's testimony will be precluded.

II.   KATHLEEN SAMPECK

Sampeck is a vocational rehabilitation specialist whose
training and work has focused upon injured and disabled persons.
She would be called as an expert in the life care needs of the
elderly.  (Gov't 1st Mot. to Exclude Expert Testimony at 4; Ex. 6
June 12, 2006 letter.)  She would testify to (1) the particular
needs of the elderly for living accommodations, medical care,
transportation, nutrition, financial and emotional security,
psychological well being, mental stimulation, companionship, and
other needs; (2) the advantages and disadvantages of various
living arrangements for the elderly, such as in-home care,
assisted living and nursing home care; (3) the benefits to
elderly persons of being able to continue to live in their own
homes; (4) the cost of elder care, including the relative cost of
alternative living arrangements; (5) the benefits of having a
family member or other responsible person overseeing the care of

- 16 -

an elderly person; (6) traditions and practices of elder care in families and communities of the District of Columbia; and (7) the value of the services provided by Rogers to his clients. (Def.'s Supp. Notice of Expert Testimony at 3.)

A.    Rule 16

In his first submission, Rogers offered only topics on which Sampeck would testify and offer an opinion, but not the actual conclusion to which she would testify. (See Gov't 1st Mot. to Exclude Expert Testimony at 4; Ex. 6 June 12, 2006 letter.)    The defendant supplemented the notice on July 5, 2006, but provided only a more detailed list of topics about which Sampeck would testify.    The defendant's disclosures have still not met the requirements of Rule 16 if Sampeck is to opine.

B.    Daubert standards and relevance

For a witness's testimony to be admissible under Rule 702 and Daubert, the witness must be qualified as an expert by her knowledge, skill, experience, training or education.    Fed. R. Evid. 702.    Sampeck is not a psychologist, and her resume is devoid of geriatric specialty.    Her opinions about the needs of the elderly, the psychological benefits of some elderly persons living out their days in their home under family care, elder care costs, or the traditions and practices of elder care in the District of Columbia would find no support in her curriculum vitae.    Furthermore, some topics, such as the benefits of elderly

- 17 -

people living in their own homes under family care, do not seem
to be topics beyond the ken of the jury's common sense and expert
testimony on these issues would do little to help to the jury as
Rule 702 requires.

Sampeck may have expertise on the costs of living
accommodations and various care services that are common to the
elderly and the disabled.  Expert background testimony about the
cost and value of the kind of non-legal services the defendant
provided may be corroborative of any evidence that he took only
what money he was entitled to take.  Such testimony about the
costs of various living accommodations and care services could
corroborate evidence of the use of any funds missing from the
client's accounts.  Evidence that there was no undue gain to the
defendant - - i.e. that the scheme did not succeed - - is as
probative as evidence of the financial gain to the defendant - -
i.e. that the scheme succeeded.  Sampeck, then will not be
precluded as an expert witness to provide background testimony on
these matters within her expertise that are relevant and helpful
to the jury.

III. EDWARD VARRONE

Edward Varrone is an attorney who specializes in elder law
in the District of Columbia.  (Def.'s Supp. Notice of Expert
Testimony at 3.)  He would testify (1) to the use of powers of
attorney and other estate planning devices regarding the needs of

- 18 -

the elderly; (2) to the authority of an attorney-in-fact under
powers of attorney, including the powers of attorney executed by
Goode, Beane, Danzel Lewis and others, and that the defendant's
expenditures were authorized by those powers of attorney; (3) to
the services provided and fees customarily charged by elder law
lawyers in D.C. and Maryland; (4) to the disclosure and billing
procedures under a power of attorney when the principal is
incapacitated; and (5) to whether the Rules of Professional
Conduct apply to Rogers' relations to his clients and whether he
violated such a rule.

      A.    <u>Rule 16</u>

      As was true regarding Moldauer and Sampeck, Rogers' first
submission concerning Varrone offered only the topics on which
Varrone would testify and offer an opinion, but not the actual
conclusion to which he would testify. (<u>See</u> Gov't 1st Mot. to
Exclude Expert Testimony at 4; Ex. 6 June 12, 2006 letter.)  The
defendant's supplement on July 5, 2006, provided a list of
testimony topics but only one opinion to which Varrone would
testify.  Aside from revealing Varrone's conclusion that Rogers'
expenditures were authorized, Rogers' disclosures still do not
satisfy Rule 16's requirements if more opinions are to be
elicited.

- 19 -

B.   Issues of law

Generally, expert testimony as to a conclusion of law is

"well beyond the bounds of permissible expert testimony."

See, e.g., Housing Works, Inc. v. Turner, 362 F. Supp. 2d 434, 448

(S.D.N.Y. 2005).  "An expert witness may not deliver legal

conclusions on domestic law, for legal principles are outside the

witness' area of expertise under Federal Rule of Evidence 702."

Weston v. Wash. Metro. Area Transit Auth. 78 F.3d 682, 684 n.4

(D.C. Cir. 1996) (citing Marx & Co. v. Diners' Club, Inc., 550

F.2d 505, 509-12 (2d Cir. 1977) (holding that an expert's

testimony as to the "legal standards which he believed to be

derived from the contract and which should have governed

[defendant's] conduct" was inadmissible where the expert was

qualified to testify "to customary practices of a trade or

business")).  When an expert defines an issue of law for the

jury, the witness "invad[es] the province of the court."  Berry

v. City of Detroit, 25 F.3d 1342, 1353 (6th Cir. 1994) (holding

under Rule 704 that "[i]t is the responsibility of the court, not

testifying witnesses, to define legal terms").

Varrone cannot opine what a power of attorney legally

entitles the holder to do, whether the defendant's expenditures

were authorized under a power of attorney, whether the Rules of

Professional Conduct applied to the defendant, and whether the

- 20 -

defendant violated any such rule.  Those are impermissible legal
opinions which invade the province of the court.

      C.   Daubert standards and relevance

      As an experienced elder law attorney knowledgeable about the
practice in the District of Columbia, Varrone appears to be
qualified to testify to the usual use of estate planning devices
and powers of attorney, the customary billing and disclosure
practices followed, the customary fees charged for elder law
services, and the usual services provided by elder law attorneys
in D.C. and perhaps in Maryland.  Additionally, Varrone's
testimony on these limited topics would aid the jury in
understanding the evidence.  Elder law practices are not within
the usual experience of a jury and testimony that does not opine
on legal conclusions would assist the trier of fact.

      Since intent to defraud clients involves proof of actions
taken "wilfully and with specific intent to deceive or cheat,
ordinarily for the purpose of either causing some financial loss
to another or bringing about some financial gain to one's
self[,]" United States v. Lemire, 720 F.2d 1327, 1341 (D.C. Cir.
1983), Varrone's testimony would be relevant to whether the
defendant intended to gain financially from his scheme or cause
loss to others through his scheme.

      Varrone will not be precluded as an expert witness to
provide background testimony concerning the usual use of estate

- 21 -

planning devices and powers of attorney, the customary billing
and disclosure practices followed, the customary fees charged for
elder law services, and the usual services provided by elder law
attorneys in D.C. and Maryland.

ORDER

Accordingly, it is hereby

ORDERED that the government's motions [## 52, 61] to
preclude expert testimony be, and hereby are, GRANTED in part and
DENIED in part.  Lanning Moldauer shall be precluded as an expert
witness.  Kathleen Sampeck and Edward Varrone shall not be
precluded from providing expert background testimony limited in
the fashion detailed above.

SIGNED this  15th  day of July, 2006.


                              _____
                              RICHARD W. ROBERTS
                              United States District Judge