## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 1:05-cr-00292-RWR-ALL |
| v. | : | |
| | : | |
| REGINALD JEROME ROGERS, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF
### DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND A NEW TRIAL

Reginald J. Rogers, through his attorneys at HANNON LAW GROUP, LLP, presents this

Memorandum in Support of Defendant's Motion for Judgment of Acquittal and a New Trial.

### BACKGROUND

This case involves the first foray by the United States Attorney's Office in this district

into the federal criminalization of attorney misconduct under the District of Columbia Rules of

Professional Responsibility.  Under the Indictment, the Government alleged that Mr. Rogers was

an attorney subject to the Rules of Professional Responsibility, that "as a licensed attorney,

ROGERS had certain fiduciary duties to his clients" (Indictment at 2), and that the purpose of the

alleged scheme was for Mr. Rogers to obtain monies by false promises that he would act as a

representative of the so-called victims and preserve their retirement savings from loss.  The

Manner and Means alleged involved allegations that Mr. Rogers "obtained control" of his clients

assets through the use of general powers of attorney, disregarded his "fiduciary obligations" and

diverted proceeds of his clients without their knowledge and consent.  As the Government

summarized it in the opening statement, Mr. Rogers "ingratiated himself to his clients to gain

their trust" and then defraud them of their assets.  In sum, the Indictment charges that Mr. Rogers

obtained money for himself in violation of the District of Columbia Rules of Professional

Responsibility.

Mr. Rogers has maintained throughout this litigation that even if the Government could prove these allegations – which it has not – the result is not a federal crime of mail fraud. The history of the Government's efforts to make a federal crime of ethical misconduct under state standards or violations of local laws is clear: the United States Courts of Appeals and the Supreme Court do not countenance such expansion of the federal mail fraud statute. The latest example is the Fifth Circuit's rejection of certain mail fraud convictions in the Enron cases, which is discussed in more detail below.

The Indictment in this case does not state a federal criminal offense, the evidence was insufficient to prove both a federal criminal offense and the allegations contained in the Indictment, and there is no evidence justifying the damages findings by the jury in this matter.

## THE GOVERNMENT'S TRIAL EVIDENCE

The alleged victims of Mr. Rogers' conduct were his clients: Hattie Mae Goode, Minnie Beane, Danzel Lewis, Julia Wooten, and John Henderson. The Government does not dispute that Mr. Rogers was authorized by various powers of attorney executed by his clients to pay himself for work performed on behalf of his clients. Yet, in the face of this authorization which is undisputed, the Government argued to the jury that every penny that came out of his clients' accounts and was transferred to him or others for his benefit constitutes a theft. This remarkable theory has no precedent in the law. Predictably, the jury no doubt concluded that Mr. Rogers did something wrong as an attorney; therefore, all the money he received must have been obtained improperly. This is so because of the manner in which the Government chose to present evidence of the alleged scheme to defraud.

The overall theory and evidence of mail fraud came from the "summary" testimony of

auditor Nicholas Novak, an employee of the United States Attorney's Office. Mr. Novak testified as to charts which he prepared summarizing the money withdrawn from Mr. Rogers' clients' accounts. Mr. Novak testified that he was aware that several clients had executed durable and general powers of attorney authorizing Mr. Rogers to act on their behalf with respect to their funds. Mr. Novak also testified that he would not have included any expenditure in his chart if there were a basis for it. Mr. Novak testified that he had included every dollar withdrawn from the clients' accounts in his calculation of the losses caused by Mr. Rogers' alleged scheme to defraud because he could not find a written explanation for the purpose of the withdrawal that met his personal auditing standards. Mr. Novak testified that he did not know the purpose of any of the withdrawals that he included in his list of losses. Yet, it was his testimony and the Government's theory that every dollar amounted to a fraud, simply because it could not find a record in Mr. Rogers' accounts explaining the payment. This is the height of speculation and turning the absence of evidence into evidence.

The more particular evidence as to each of these clients is even more sparse and summarized as follows:

**Hattie Mae Goode**: Mr. Rogers had represented Ms. Goode continuously since the beginning of her husband's last illness. Mrs. Goode praised Mr. Rogers' service to everyone who testified. Mr. Rogers worked thousands of hours for Mrs. Goode for well over ten years. Mrs. Goode had executed a valid durable and general power of attorney in favor of Mr. Rogers because her blood relatives had abandoned her. The Government does not dispute that this power of attorney authorized Mr. Rogers to pay himself for services provided to Mrs. Goode.

During a minor illness in 2003, Mrs. Goode's sister and niece came to Washington, D.C. Agnes Gay and Alma Robinson Moses made clear that Mr. Rogers believed that Mrs. Goode was

incompetent at the time of their arrival. This dispute and the evidentiary basis for it is also clear from the evidence, which includes evidence that Gay and Goode manipulated Mrs. Goode into giving them a new power of attorney, changing the terms of her trust, and writing the loyal Marva Shields out of her estate. Mr. Rogers told Gay and Moses that he had a duty to act in Mrs. Goode's best interest to protect her even in the event of incompetence. Gay and Moses took Mrs. Goode to the bank for the purpose of getting her money. While at the bank, learning that Mr. Rogers had withdrawn the balance of her funds, Gay testified that Mrs. Goode acted surprised that her money was gone.

Special Agent John Cotter testified that he interviewed Mr. Rogers regarding the allegations by Gay and Moses. He testified that Mr. Rogers stated that Mrs. Goode was incompetent, that he worked thousands of hours for her, that he had paid himself for this work from her account under the power of attorney, that he had "utilized" some of her money for his own purposes, that perhaps he "owed her" $150,000, and that he would repay whatever the amount is determined to be whether more or less. Special Agent Cotter did not question Mr. Rogers about any other client.

Mrs. Goode did not testify as a witness at trial.

**Minnie Beane**: As Minnie Beane was deceased at the time of trial, the only evidence of her intentions came from other witnesses. Mrs. Beane was aware of the allegations against Mr. Rogers and refused to be involved with the FBI Agents who came to her home. Every witness who was asked acknowledged that Mr. Rogers performed heroic acts of kindness and legal service to her in times of great need. Mrs. Beane executed a reverse mortgage with Mr. Rogers' assistance, and this fact was confirmed by Shelly Giordano of Wells Fargo. Mrs. Beane had also executed a durable general power of attorney authorizing Mr. Rogers to act on her behalf,

including the right to pay himself for services provided.  There was no evidence that Mrs. Beane objected to any payment to Mr. Rogers, and no evidence that the amounts Mr. Rogers received were exorbitant in light of the work performed by him.

**Danzel Lewis**:  Mrs. Lewis did testify, although it was clear that her opinion as to Mr. Rogers was influenced by what Special Agent Cotter had told her.  She refused to speak with Mr. Rogers after being interviewed by Agent Cotter.  Mrs. Lewis testified that she was not aware of bank transfers that Mr. Rogers executed on her account.  Mrs. Lewis had also executed a general durable power of attorney to Mr. Rogers, and she acknowledged the many services provided her by Mr. Rogers in her times of need.  She was not aware at the time of trial that Mr. Rogers had fully restored all funds to her account that she was concerned were missing.

**Julia Wooten**:  The Government really presented no evidence in connection with Julia Wooten.  The Government alleged but did not prove that a check written and signed by Mrs. Wooten to Mr. Rogers was a fraudulent transfer.  The Government alleged but did not prove that a check written and signed by Mrs. Wooten to American Express was a fraudulent transfer.  Mrs. Wooten is deceased, and there was no evidence presented whatsoever regarding Mrs. Wooten's views of either these two transactions.  On the contrary, the evidence was again abundant that Mr. Rogers had provided thousands of hours of services to Mrs. Wooten for which she was very grateful.

**John Henderson**:  Mr. Henderson was also deceased at the time of trial.  Kelly Del Rio of the Orphans Court for Prince Georges County testified that in the Henderson Estate, Mr. Rogers never filed a petition for attorneys fees.  Ms. Del Rio also testified that the accountings filed by Mr. Rogers appeared proper on their face.

## ARGUMENT

On July 6, 2006, a criminal trial commenced against Reginald J. Rogers in the United States District Court for the District of Columbia.  The trial was concluded on July 26, 2006.  Reginald J. Rogers was found guilty on all counts.  The jury also returned a forfeiture verdict in the amount of $385,000.  The sentencing is scheduled for October 20, 2006.

At the end of the Government's case in chief, Defendant made a motion for judgment of acquittal.  Defendant renewed the motion at the end of the case.  After the verdict was received, the Court granted Defendant's oral motion for an extension of time to file post-trial motions under Rules 29, 33 and 34.

Defendant Reginald J. Rogers now seeks a judgment of acquittal notwithstanding the jury's verdict and, in the alternative, a new trial.

## I.    MOTION FOR JUDGMENT OF ACQUITTAL

### A.  Standard of Review

The standard for granting judgment of acquittal is clear:

> Test for determining whether to grant [a] motion for judgment of acquittal under Rule 29 is whether at the time of the motion, viewing the evidence in a light favorable to government, there is relevant evidence from which [the] jury can reasonably find [the] accused guilty beyond [a] reasonable doubt of each element of the crime charged.

*United States v. Brandon*, 633 F.2d 773 (9th Cir. 1980); *United States v. Dior*, 671 F.2d 351 (9th Cir. 1982); *United States v. Roy*, 213 F. Supp. 479 (D.C Del. 1963); *United States v. McKnight*, 439 F.Supp. 536 (E.D.Pa. 1977).  During the course of the trial the, "[p]rosecution must present substantial evidence as to each element of the offense from which [the] jury could find [the] accused guilty beyond [a] reasonable doubt; … where evidence is at least as indicative of innocence as guilt, [the] trial court must direct a verdict of acquittal." *United States v. Haranda*, 333 F. Supp. 2d 618 (E.D.Mich. 2004).

### B.  The Insufficiency of Government's Evidence on the Claim of Mail Fraud

The Indictment charged Mr. Rogers with mail fraud in violation of 18 U.S.C. § 1341. The Indictment and the Government alleged that Mr. Rogers violated certainly legally imposed duties that arose as a result of his attorney-client relationship with the so-called victims of his fraud.  However, the Government failed to prove the existence of these duties and that Mr. Rogers violated any of those duties. Moreover, even if the Government presented sufficient evidence of these duties, their alleged violation by Mr. Rogers would not constitute the federal offense of mail fraud.  As stated by the court in *United States v. George*, 477 F.2d 508, 512 (7th Cir. 1973), "[n]ot every breach of every fiduciary duty works a criminal fraud."  *See also United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993).  The federal government may not, under the guise of mail fraud, convert what is either a breach of attorney ethics or a local criminal offense into a federal offense.

In *United States v. Rabbit*, 583 F.2d 1014, 1025 (8th Cir. 1978), the court noted that the, "evidence clearly shows that [defendant] acted unethically and [in] violation [of] his canons as a lawyer, …, and possibly a Missouri law… but such violations although bearing on intent to defraud, do not in and of themselves establish the substantive crime of mail fraud."  The Seventh Circuit has pointed out that a scheme to defraud is not satisfied by merely alleging unethical conduct.  In other words, the mere breach of a fiduciary duty, standing alone, will not constitute mail fraud. *See United States v. Bloom*, 149 F.3d 649, 655 (7th Cir, 1998).

In other decisions involving evidence of the rules of professional conduct, courts have uniformly concluded that violation of an ethical norm alone cannot constitute mail fraud.  In those cases where a conviction is sustained, there is an independent presentation of evidence as to the ethical norms involved through actual witnesses subject to cross-examination.  *See*, *United*

*States v. Hausman*, 345 F.3d 952 (7th Cir. 2003); *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998); *United States v. Machi*, 811 F.2d 991 (7th Cir. 1987*)*; *United States v. Altman*, 48 F.3d 96 (2d Cir. 1995); *United States v. Bronston*, 658 F.2d 920 (2d Cir. 1981).

The risk involved in all of these cases -- as pointed out by a noted authority on attorney practice, Professor Bruce A. Green of Fordham Law School and former Assistant United States Attorney -- is the creation of a federal common law of criminal conduct applicable to attorneys for which they have no notice. As the rule of lenity applies both to application of the mail fraud statute in criminal cases and the application of the rules of professional conduct in disciplinary matters, the Court must be wary of improper use of the mail fraud statute to federalize what is only at best a local concern. 67 Fordham L. Rev. 327 (November 1998).

Mr. Rogers relies upon his arguments and pleadings made on this issue throughout trial. Suffice to say that the Government's theory or prosecution itself does not constitute mail fraud. Yet, the Government made very little effort to prove at least that theory. No witness versed in the Rules of Professional Conduct testified as to the professional obligations imposed on Mr. Rogers. No witness was proffered to explain to the jury the meaning or the Rules of Professional Responsibility that were admitted into evidence under the guise of judicial notice. No one explained to the jury how to apply these rules, or whether they applied to Mr. Rogers at all. No witness was proffered to explain how these duties may be modified in the case where the client is incompetent. All this was left to the jury's imagination.

An attorney's billing an excessive fee is not a federal scheme to defraud. *McDonald v. Schencker*, 18 F.3d 491 (7th Circuit, 1994). Where the thefts that are not temporally related to the events constituting the scheme to defraud, there can be no mail fraud. *United States v. Buckner*, 108 F.2d 921 (2d Cir., 1976). The Government did not prove that Mr. Rogers entered

into these attorney-client relationships and prepared the various powers of attorney as part of a scheme to defraud, which did not reach fruition until some time later when he paid himself for services provided. In essence, at best the Government's case amounts to embezzlement, because the Government could not prove that the establishment of the attorney-client relationship was with the intent to defraud at some later time.

The Government's case is far weaker than that condemned in *United States v. D'Amato*, 39 F.3d 1249 (2d Cir., 2002). As in *D'Amato*, the jury's decision is based on speculation and predicated on evidence which is "at least as consistent with innocence as with guilt." An actual harm or injury must have been contemplated by the defendants. Here, the Government told the jury that every dollar received by Mr. Rogers was part of a scheme to defraud because there are accounting responsibilities imposed by the Rules of Professional Responsibility that Mr. Rogers violated. There is no basis in the evidence for such an inference, and even if found that inference does not constitute mail fraud.

## C. The Insufficiency of Government's Evidence on the Issue of Damages

### 1.     The Testimony of Nicholas Novak

Mr. Rogers objected to the testimony of Nicholas Novak on the grounds that his testimony constituted impermissible opinion testimony. The Court overruled that objection on numerous occasions. Mr. Rogers also moved that Novak's testimony be stricken on the grounds that he admitted that he did not know the purpose of any of the withdrawals that he attributed to the alleged loss, and that his loss theory constituted an impermissible shifting of the burden of proof onto Mr. Rogers. The Court overruled these objections. Mr. Rogers contends that these rulings were error, and that permitting this evidence before the jury – particularly where coupled with the judicial notice of the rules of professional conduct – was unduly prejudicial. In any

event, it is clear on its face that this evidence is insufficient to establish any loss and insufficient to support the jury's forfeiture verdict.

### 2.     The Damages as to the Clients

The Government has failed to present sufficient evidence to support the jury's finding that there were damages suffered by the so-called victims.  Without actual damage, there can be no mail fraud, and the jury's finding of  a specific forfeiture amount cannot stand.  As argued by Mr. Rogers at the close of all the evidence, the Government should not have been permitted to proceed with its claim that all of the so-called victims were damaged and should not have been permitted to argue for a forfeiture for all the so-called victims.  The purpose of the scheme must be to injure.  There must be evidence that some actual harm or injury must have been contemplated by Mr. Rogers.  Where there is no injury flowing from the alleged deception, there can be no mail fraud violation.  *United States v. Regent Office Supply*, 421 F.2d 1174 (2d Cir., 1970).

The Government heavily relies on a "confession" by Mr. Rogers, upon which the Court relied in denying Mr. Rogers' motion for judgment of acquittal at the close of the Government's evidence.  However, the "confession" by Mr. Rogers relates only to Hattie Mae Goode, and not to Minnie Beane, Danzel Lewis, Julia Wooten or the Henderson Estate.  Even with respect to Hattie Mae Goode, the evidence presented by the Government, at most, shows that Mr. Rogers "utilized" what he guessed to be approximately $150,000.  This is not an admission of fraud or theft.

As to Minnie Beane, the Government only presented two witnesses, Shelly Giordano and Debra Lynn Smith.  Ms. Giordano briefly discussed the reverse mortgage on Minnie Beane's house.  Ms. Smith testified that she volunteered to help an heir of Mrs. Beane obtain information

from Mr. Rogers.  There was no admission by Mr. Roger's nor was there any evidence of

complaints by Minnie Beane or testimony to show that Mr. Rogers' use of Minnie Beane's funds

were unauthorized.  Instead, the evidence was overwhelming regarding the wonderful care Mr.

Rogers provided for Minnie Beane.

     Regarding Julia Wooten, the Government introduced no witnesses.  The only evidence

presented by the Government was two checks written by Ms. Wooten.

     Concerning Danzel Lewis and the Henderson estate, the Government failed to establish

that either client suffered a loss.

     It should also be noted that counsel for Mr. Rogers requested a special verdict on the

issue of damages, in order to ascertain the amount of damages allocated to each client by the

jury.  The Government objected to this request.  The Court sustained the objection.  Therefore,

only a general verdict was sent to the jury on the forfeiture claim.  As the, "jury was not asked to

indicate the basis for its verdict, the Government must prove all … [the] theories in order for

[the] conviction to be affirmed." *United States v. Brown*, No. 05-20319, 2006 WL 2130525 at *6

(5th Cir. 2006), citing *Yates v. United States*, 354 United States 298 (1957).  There was absolutely

no evidence that Mr. Rogers engaged in any scheme to defraud these clients.  The Court cannot

rely on the Cotter "Confession" as to these other clients, because Mr. Rogers was not asked

about any of these clients in that interview.

### D.  The Insufficiency of the Indictment, Including the Insufficiency of Proof Regarding Legally Imposed Duties

     The Indictment itself presented by the Government is insufficient to establish a claim of

mail fraud against Mr. Rogers.  In determining the sufficiency of the Indictment, the standard of

review applied by the Court is *de novo*.  *See United States v. Brown*, No. 05-20319, 2006 WL

2130525 at *5 *citing United States v. Caldwell*, 302 F.3d 399, 407 (5th Cir. 2002).  In

determining the issue under the *de novo* standard of review, the court must determine, "whether … a rational jury could have found the essential elements of the offense beyond a reasonable doubt."  *See United States v. Brown*, No. 05-20319, 2006 WL 2130525 at *10 *citing United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995).  Given that the Government has failed to present sufficient evidence as to the alleged duties imposed on Mr. Rogers and their breach, "a rational jury could [not] have found the essential elements of the offense beyond a reasonable doubt."  *Id*.

In order to establish the alleged scheme to defraud, the purpose of the scheme, and the manner and means, the Government must establish beyond a reasonable doubt that Mr. Rogers acted as an attorney, was subject to the enumerated legally imposed duties set forth in the indictment, and violated those duties as part of a scheme to defraud.  *See* Def.'s Opp'n to Government's Motion In Limine for Judicial Notice of Rules of Professional Conduct at 7-8. The Government through the Indictment merely alleged the existence of several legally imposed duties, but never proved anything with respect to those duties or their violation by Mr. Rogers. The Government made no effort to prove, whether through an expert witness or otherwise, that Mr. Rogers was subject to the alleged legally imposed duties.  Simply tossing several portions of the Rules of Professional Conduct into the jury room by way of judicial notice is insufficient to prove Mr. Rogers had a duty that was subsequently breached in connection with these particular clients.  Moreover, it is beyond the ken of the jury to apply the rules that were provided to them to the facts of this case.

## II.  <u>MOTION FOR A NEW TRIAL</u>

Should the Court not grant judgment of acquittal, Mr. Rogers requests that he be afforded a new trial.

## A.  Standard of Review

Under Rule 33, the court may order a new trial if one is required in the interest of justice. "The provision of rule 33 permitting a new trial if required in the interest of justice, though temperately to be utilized, is broader in scope than the limitations which have been held applicable where the motion is based on newly discovered evidence." *Brodie v. United States*, 295 F.2d 157, 160 (D.C. Cir. 1961).

Mr. Rogers contends that he is entitled to a new trial -- if the Court does not grant his motion for judgment of acquittal -- on several evidentiary issues which injected impermissible error into the proceedings before the jury.

## B.  Exclusion of Expert Testimony

It was error for the Court to exclude the expert testimony proffered from Dr. Lanning Moldauer, Ph.D., and those portions of Mr. Edward G. Varrone's testimony that deal with the scope of a power of attorney.

### Psychologist Lanning Moldauer, Ph.D.

It was error for the Court to exclude the testimony of expert witness Dr. Lanning Moldauer, Ph.D., on the grounds that the notice was late and that the Government would suffer prejudice.  The Court stated that Defendant's notice of its intent to introduce the testimony of Dr. Moldauer was untimely and failed to provide a reason for the delay.  Mem. Op. and Ord. at 5. However, with the trial continued to July 6, 2006, both prosecution and defense were able to turn their attention to other matters and resume trial preparation in May.  On May 1, 2006, Counsel for Mr. Rogers opened a new law practice, while simultaneously preparing for oral arguments before the District of Columbia Court of Appeals that was scheduled for May 9, 2006, in the disbarment action brought against Mr. Rogers.  Counsel for Mr. Rogers was also preparing a

Reply Brief to the United States Court of Appeals for the Fourth Circuit in connection with the civil suit brought against Mr. Rogers by Hattie Mae Goode.

There was also no reason for counsel for Mr. Rogers to believe that the Government required any earlier notice as to the details of Dr. Moldauer's opinion.  On May 11, 2006, Assistant United States Attorney John Griffith requested information on Mr. Rogers' "expert witness' opinions, the basis and reasons for those opinions and the witness' qualifications." Although Counsel for Mr. Rogers did not respond promptly, Counsel for Mr. Rogers had a telephone conference with AUSA Griffith on June 9, 2006, where he orally outlined the anticipated testimony of Dr. Moldauer and promised a letter detailing the testimony of the experts by June 12, 2006.  Mr. Griffith did not raise any objections to the promise of a letter on June 12, 2006; yet, Assistant United States Attorney Lucas when she joined the prosecution team filed a motion to exclude Defendant's expert testimony without any notice to counsel for Mr. Rogers, as had been requested of Mr. Griffith.

What occurred is that Mr. Griffith clearly was not concerned about the timing of the disclosure of the details of Dr. Moldauer's opinions.  When Ms. Lucas was added to the prosecution team, the Government's strategy changed, and rather than responding substantively to Dr. Moldauer's opinions, the Government engaged in litigation with the sole goal of precluding Dr. Moldauer's testimony with no intention to counter it with an expert of its own, or to seek any relief from the Court as it would be entitled to under the rules.  The Court cannot attribute "untimeliness" to Mr. Rogers under these circumstances.  There is no evidence that the notice was untimely in terms of the Government's need to prepare for or counter the opinions of Dr. Moldauer.  Indeed, the Government did nothing once its motion was filed other than to encourage the Court to exclude Dr. Moldauer, which it ultimately did.  The Government had no

intention to and made no effort to either explore or counter the proposed opinions of Dr.

Moldauer.  Yet, the Government had ample time to do so.

Moreover, the Government presented absolutely no evidence that it was prejudiced in any

manner by the so-called late notice.  The law cited by Mr. Rogers in the pleadings on this issue is

clear: without a demonstrated showing of prejudice to the Government, it is reversible error to

preclude a witness in limine even assuming the notice was late.  Therefore, the critical element of

proof of unfair prejudice is absent.

The Court next applied the Daubert standard in determining that Dr. Moldauer should not

be allowed to testify.  Citing to Judge Urbina, the Court stated in its Memorandum Opinion on

this issue:

> [e]xpert testimony is admissible if (1) the testimony is based upon sufficient facts
> or data, (2) the testimony is the product of reliable principles and methods, and (3)
> the witness has applied the principles and methods reliably to the facts of the
> case.' Fed. R. Evid. 702.  A witness may qualify as an expert through knowledge,
> skill, experience, training, or education.  Id.  Rule 702 requires trial courts to act
> as 'gatekeepers' to ensure that the methodology underlying the expert testimony
> is valid and the expert's conclusion is based on 'good grounds.' (*citations
> omitted*).  The trial court's gatekeeping obligation applies not only to scientific
> testimony but to all expert testimony.  *Kumho Tire Co. v. Carmichael*, 526 United
> States 137, 148 (1999).

Mem. Op. and Ord. at 9.  The Court was much too clinical in its application of the Daubert

standards to Dr. Moldauer's testimony.  Dr. Moldauer was not being presented to testify as to

conclusions developed through scientific studies of the link between birth defects and a drug.

Dr. Moldauer was being presented to testify to a garden variety opinion derived from the

standards of clinical psychology.  To apply the Daubert standards would be to deprive every

litigant of opinion testimony which is historically admissible in federal courts.  Given that Dr.

Moldauer saw Mr. Rogers on several occasions beginning shortly after the investigations against

Mr. Rogers were initiated, Dr.  Moldauer is well aware of the facts of the case and given his

experience, there is no question that Dr. Moldauer applied the principles and methods of traditional psychological analysis in reaching his opinions in this matter.

Lastly, the Court stated that, "[t]he defense has not demonstrated a sufficient link between the psychological opinions offered and the specific intent element of the crime to make the evidence helpful to the jury." Mem. Op. and Ord. at 11.  As noted by the Court, "[i]n order to have probative value as to mens rea, defendant's expert testimony must relate to the particular misrepresentations attributed to him in the indictment."  Mem. Op. and Ord. at 12, *citing United States v. Bennett*, 29 F. Supp.2d 236, 240 (E.D. Pa. 1997).  Once again, the Court's analysis of the applicable standard and the opinions proffered is much too limited and clinical.  The Indictment alleges that Mr. Rogers had the intent to deceive and to defraud his clients by, in essence, posing as their counsel and/or taking advantage of his position as their counsel to steal from them.  In limine exclusion of evidence is not favored, and Dr. Moldauer's proffered testimony was sufficient to permit the jury to determine what weight his opinions had on the issue of specific intent.

In determining whether the expert testimony of Dr. Moldauer should have been excluded, it is important to note that, "[a] review of case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee Note.

### Attorney Edward G. Varrone, Esq.

It was error for the Court to exclude those portions of Edward G. Varrone's proffered testimony that dealt with the scope of a power of attorney on the grounds that the testimony constitutes impermissible legal opinions. Mem. Op. and Ord. at 20.  As the Advisory Committee to the Federal Rules notes:

> There is no more certain [a] test for determining when experts may be used than the common sense inquiry [of] whether the untrained layman would be qualified to determine intelligently and to the best possible degree, the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

Advisory Committee Note to Fed. R. Evid. 702.  As noted by the Court, "Varrone's testimony on [certain] limited topics would aid the jury in understanding the evidence.  Elder law practices are not within the usual experience of a jury and testimony that does not opine on legal conclusions would assist the trier of fact."  Mem. Op. and Ord.at 20.  Hence, given that Mr. Varrone has a "specialized understanding of the subject," his testimony would "enlighten" the jury as to the "subject involved in the dispute."

The Court cites several cases for the proposition that Mr. Varrone's testimony as to the scope of a power of attorney is an impermissible conclusion of law which would in essence invade the power of the Court to rule on legal issues.  However, these cases can be distinguished from the case hand.  The Court relies on *Housing Works, Inc. v. Turner*, 362 F. Supp. 2d 434, 448 (S.D.N.Y. 2005), for the proposition that expert testimony as to conclusions of law are "well beyond the bounds of permissible expert testimony."  Mem. Op. and Ord.at 19.  There is no dispute as to the validity of this general statement; however, the court in *Housing Works, Inc.* excluded the expert testimony because the witness attempted to testify as to the proper measure of damages, an ultimate issue in the case  *Id*.  Mr. Varrone, on the other hand, was not planning to testify as to an ultimate legal issue, but rather what a power of attorney entitles the holder to do, the usual purpose of a power of attorney, and the standard of conduct of an attorney under such a power.  Just as the Government contends that it can indict an attorney for violating "legally imposed duties" of his profession, so too an attorney defendant must be permitted to present an expert witness in the conduct of attorneys who can express an opinion as to whether

the attorney's conduct actually violated the duties alleged.

For example, an expert physician may certainly testify in defense of a criminal case against a physician charged with over-prescribing pain medication. Just because the defendant in this case is an attorney does not mean that an attorney expert cannot express opinions as to the legally-imposed duties and the legal meaning of a power of attorney. Such opinion testimony does not in any way invade the authority of the Court to determine the law, nor does it invade the province of the jury as to the ultimate issues in the case. Just as the Government should have been required to present its claim that Mr. Rogers had legally imposed duties through an expert in the law of attorneys, so too Mr. Rogers should have been permitted to present opinion testimony that his conduct did not depart from recognized legal standards that apply to elder law counsel.

Hence, Mr. Varrone's testimony is not to be regarded as law or a legal conclusion, it is merely the analysis of an attorney who specializes in elder law as to the standard of conduct an attorney in the field of elder law is held to. Additionally, in *Housing Works, Inc.* a major factor in excluding the expert testimony was the absence of reliable testimony from the expert. *Id*. The plaintiff's expert witness was not even the "proper vehicle for introducing evidence of the alleged injury." *Id*. The witness' expertise was in another area, unrelated to the matters she was testifying to. In contrast, Mr. Varrone is qualified to speak on the subject of elder law, and his testimony is reliable, as is evident by the Court's order. Mem. Op. and Ord.at 20. Mr. Varrone would testify as to matters in a field in which he is fully immersed. His testimony is thus reliable in assisting the jury to understanding the nuances of a power of attorney.

The Court next cites, *Weston v. Wash. Metro. Area Transit Auth.*, 78 F.3d 682, 684 n.4 (D.C. Cir. 1996), for its single statement that, "[the] district court overruled WMATA's objection

that [the expert] was impermissibly delivering an opinion on matters of law.  An expert witness

may not deliver legal conclusions on domestic law, for legal principles are outside the witness'

area of expertise under Federal Rule of Evidence 702." *Id*.   The expert witness was an escalator

engineer who testified that, "under the law he believed was in force at the time of the accident,…

the gap clearance was required to be no more than three-sixteenths of an inch on either side…."

*Id*.  Mr. Varrone's proposed testimony does not go so far as to tell the jury what the law is that

applies to the jury's determination in the case.  Instead his testimony explains the conduct of an

attorney who has been given a power of attorney.  The testimony is taken from years of

experience in the field and does not infringe on any court or jury prerogative.

Finally, the Court cites *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994), which

found that under Rule 704, "it is the responsibility of the court, not the testifying witnesses, to

define legal terms."  Initially, it should be noted that Mr. Varrone's testimony would not involve

definitions of any legal terms which were critical elements of the charges against Mr. Rogers.

Rather, his opinions would involve an explanation of the significance of a document to a lawyer,

and opinions about the conduct of a lawyer in comparison with the very legal duties the

Government says were imposed on Mr. Rogers.  It should next be noted that the case cited by the

Court deals with the exclusion of expert testimony based on a lack of qualifications.  *Id*. at 1348.

In this case, Mr. Varrone's qualifications have not been questioned, instead they have been

acknowledged by the Court.  If allowed to testify as to the scope of the power of attorney, Mr.

Varrone would have testified as to the scope of the authority that was granted to Mr. Rogers

under the powers of attorney and that those powers entitled Mr. Rogers to pay his own fees.

Therefore, it was an error to exclude those portions of Mr. Varrone's testimony that concerned

the scope of a power of attorney.  If the Government believes that it can indict an attorney for

allegedly violating "legally imposed duties" established by ethical standards, then it cannot object to the attorney/defendant identifying and calling as a witness an attorney expert in the law at issue.

### C.  Judicial Notice of the Rules of Professional Conduct

It was an egregious error without support in any case law for the Court to take Judicial Notice of the Rules of Professional Conduct, as such notice was incredibly prejudicial to Mr. Rogers and confusing to the jury. Throughout the trial, the Government sought to criminalize an alleged violation of the Code of Professional Conduct applicable to attorneys.  The Government attempted to create a federal common law crime, through use of the federal mail fraud statute, to criminalize an attorney's violation of his ethical responsibilities.  Through judicial notice of the Rules of Professional Conduct, the Government attempts to show that Mr. Rogers was subject to the legally imposed duties found in the Rules, and that the violation of these duties shows that Mr. Rogers must have defrauded his "clients."   However, violation of the Rules of Professional Conduct does not constitute a violation of the federal mail fraud statute.  Exposing a jury consisting of laymen to the Rules of Professional Conduct causes speculation as to the meaning of the rules and whether a violation of them constitutes a crime.  *See United States v. Lyons*, 403 F.3d 1248, 1256 (11th Cir. 2005); *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1033-1034 (9th Cir. 2003); *United States v. Gardner*, 238 F.3d 878, 881-882 (7th Cir. 2001); *United States v. Bush*, 58 F.3d 482, 488-489 (9th Cir. 1995).   Therefore, it was improper to allow judicial notice of the Rules of Professional Conduct, particularly where Mr. Rogers had no right of cross-examination as to the rules and where the Court precluded him from allowing his attorney/expert to testify as to those rules.  In addition, under clear case law it was error for the Court to take judicial notice of the rules at all.  For this, Mr. Rogers relies on his previously filed memorandum

and argument on the issue.

Even if it was not an error to admit the Rules of Professional Conduct, these Rules alone are insufficient to permit the jury to conclude that Mr. Rogers did something more than violate his ethical obligation to his clients.  Allowing the jury to be exposed to the Rules of Professional Conduct invited them to find Mr. Rogers guilty simply because he violated those Rules.  Such an action is unfair, and therefore the judicial notice of the Rules should not have been permitted by the Court.

### D.  Admission of Statements Made by  Hattie Mae Goode

Counsel for Mr. Rogers objected to the Government's solicitation from Agnes Gay of statements made by Mrs. Goode when advised that her bank account was empty.  Gay testified that she was surprised.  The Court overruled the objection, and the Government never proffered a basis for admission of these clearly hearsay statements.  Nor was there any evidence which suggested she was competent at the time of the hearsay, if it indeed occurred.  This was error.

### CONCLUSION

WHEREFORE, defendant Reginald J. Rogers respectfully requests that the Court enter a judgment of acquittal or, in the alternative, grant a new trial..

Respectfully submitted,

HANNON LAW GROUP, LLP


_____*//s// J. Michael Hannon*_____
J. Michael Hannon, #352526
1901 18th Street, N.W.
Washington, DC 20009
(202) 232-1907
(202) 232-3704 (facsimile)
jhannon@hannonlawgroup.com

*Attorneys for Defendant Reginald J. Rogers*