UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:05-cr-00292-RWR-ALL |
| v. : | |
| : | |
| REGINALD JEROME ROGERS, : | |
| : | |
| Defendant. : | |

**REPLY TO GOVERNMENT'S OPPOSTION TO
DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND A NEW TRIAL**

Reginald J. Rogers, through his attorneys at HANNON LAW GROUP, LLP, presents this Reply to the Government's Opposition to Defendant's Motion for Judgment of Acquittal and a New Trial.

### BACKGROUND

On August 4, 2005, the Government filed an indictment that charged that Reginald J. Rogers obtained money for himself in violation of the District of Columbia Rules of Professional Responsibility. Mr. Rogers has maintained throughout this litigation that even if the Government could prove these allegations, which it has not, the result is not the federal crime of mail fraud. The alleged victims of Mr. Rogers' conduct were his clients: Hattie Mae Goode, Minnie Beane, Danzel Lewis, Julia Wooten and John Henderson.

The Government's opposition does not overcome the major overarching faults of this prosecution: by indicting Mr. Rogers for breaching his fiduciary duty, the Government allowed the jury to find guilt on the basis of merely an ethical breach. This fault was enhanced by the Government's chosen approach to damages: to allow an opinion witness to tell the jury that every dollar received by Mr. Rogers constituted proceeds of a scheme to defraud.

Even in its Opposition, the Government continues this theme, accusing Mr. Rogers of

"ingratiating himself" to his clients so that he "could gain their trust" and "obtain control over their finances." This is what a good attorney does. The evidence was also uncontroverted that Mr. Rogers was authorized to make the expenditures to himself that the Government contends were the product of fraud. By telling the jury that Mr. Rogers was not entitled to a single nickel of the money he paid to himself, the Government in essence required the jury to conclude that Mr. Rogers' conduct was criminal because it violated his ethical duties under the Rules of Professional Conduct. To make matters worse, the Court would not allow Mr. Rogers to present the full expert opinions of an attorney qualified as an expert in elder law who would have clarified these issues for the jury.

## ARGUMENT

I.     **MOTION FOR JUDGMENT OF ACQUITTAL**

    A.     **Insufficiency of the Government's Evidence to Prove the Elements Found in the Indictment**

The Government states that Defendant, "conveniently overlooks" several manner and means paragraphs found in the indictment that were of central focus in the case. The Government goes on to assert that in, "reviewing the sufficiency of the indictment, the courts will construe the documents as a whole to ascertain whether the foregoing requirements have been met," yet it also states that it need not prove all the details found in the indictment. United States v. Hand, 497 F.2d 929, 934-35 (5th Cir. 1974). In essence, after implying that the indictment should be looked at as a whole, the Government contends that it need not prove all the details alleged in the indictment. Gov't Opp'n at 7.

The Government avers that, "the defendant does not and cannot cite any authority for the proposition that an essential element of mail fraud is that the defendant be an attorney, subject to legally imposed duties, and breach of those duties as part of a scheme to defraud." Gov't Opp'n

at 8. The Government is correct in asserting that the mail fraud statute does not contain such a requirement, yet the Government misunderstands Defendant's position. Defendant does not allege that the mail fraud statute requires defendant to be an attorney. Instead, the Defendant is merely attempting to hold the Government to all of the representations made in the Indictment and in its argument to the jury, since it is the document used by the Grand Jury in charging Mr. Rogers. Throughout this litigation, the Government proceeded on certain theories based on the indictment. One major fact upon which the Government rested its case and built upon was that Mr. Rogers was an attorney and therefore owed a duty to his clients; a duty which he violated. The jury's verdict was based on the indictment and the Government's contentions. The Government therefore cannot argue to the jury that Mr. Rogers violated a duty he owed to his clients as their attorney, then turn around and say that they are not required to prove all the elements listed in the indictment.

The Government also lamely answers Mr. Rogers' contention as to the lack of evidence of a scheme to defraud as to any client other than Hattie Mae Goode. The Court found important Mr. Rogers' admission to Agent Cotter that he has utilized some of Ms. Goode's funds. But there was no evidence on behalf of any other client that Mr. Rogers was not entitled to the funds he received. The Government shifted the burden of proof to Mr. Rogers because he is an attorney, as evidenced by the grand jury testimony cited in Mr. Rogers' pretrial pleadings. Had there been compliance with the Rules of Professional Conduct – i.e., documentation of a fee – Agent Cotter admitted that this case never would have been brought. Hence, this is the criminalization of a breach of ethical conduct.

The Government also argues that, "Defendant has never moved, pursuant to Fed. R. Crim. P. 7(d) to strike as surplusage any paragraphs from the Indictment." Gov't Opp'n at 7.

The Government is essentially declaring that those portions of the indictment that discuss Mr. Rogers' role as an attorney are mere "surplusage." Yet, Mr. Rogers' role as an attorney was a central fact upon which the Government based its case. The importance of this fact to the Government is shown by their persistence in requesting that the court take judicial notice of the Rules of Professional Conduct. Were counsel for Defendant to strike these portions of the indictment, there would be no criminal offense. Therefore, such portions were not surplusage and the Government has yet to present sufficient evidence to prove the elements listed in the indictment.

### B.    Insufficiency of the Government's Evidence on Issue of Damages

It has been stated that where there is no injury flowing from the alleged deception, there can be no mail fraud violation. See United States v. Regent Office Supply, 421 F.2d 1174 (2nd Cir. 1970). Alternatively, "in a conviction for the violation of the mail fraud statute … the government … must at a minimum prove that defendant contemplated some actual harm or injury to the victims of the fraud." United States v. Starr, 816 F.2d 94, 98 (2nd Cir. 1987), see also United States v. Dixon, 536 F.2d 1388, 1399 (2nd Cir. 1976), United States v. D'Amato, 39 F.3d 1249, 1257 (2nd Cir. 1994).

As part of its theory, the Government asserted that there were actual damages suffered by Mr. Rogers' clients. The Government cannot now change its theory of prosecution and state that it need not show that the alleged victims suffered any harm or injury. At the very least the Government must provide some evidence that actual harm or injury was contemplated by Mr. Rogers. Not only did the Government not provide sufficient evidence that Mr. Rogers' clients suffered any harm, but the Government did not provide evidence that Mr. Rogers contemplated some actual harm or injury to his clients.

4

### 1. Testimony of Nicholas Novak Constitutes Opinion Testimony

Contrary to the Government's assertion, Mr. Novak's testimony was not merely a depiction of information contained in the records, but constituted opinion testimony. Mr. Novak is a Certified Public Accountant who, using his training and experience, conducted an elaborate analysis of Mr. Rogers' bank records, under the guise of a "summary."

In preparation for trial, Mr. Novak reviewed the bank accounts for each "victim" and totaled as part of the loss, every check or withdrawal for which he could *not* find a written explanation. His totals also included checks that Mr. Novak *believed* were written to third parties either on behalf of Mr. Rogers or on behalf of persons other than the clients whose accounts were used. This was revealed to be a prosecution strategy concocted by Agent Cotter as evidence by a memorandum to that effect identified by Novak during his testimony. This "theory of prosecution" constitutes pure opinion: the Government is going to hold Mr. Rogers responsible for every nickel he cannot explain. Therefore, by not taking the stand, Mr. Rogers is presumed guilty.

A summary exhibit is supposed to be a non-debatable summary of documents too voluminous to be presented in Court with clarity. Fed. R. Evid. 1006. In preparation for his testimony, Mr. Novak used Quicken, not to produce summaries of the bank records, but instead to comb the bank records and make selections of withdrawals and checks which, *in his opinion*, constituted improper withdrawals from client accounts. The fact that Mr. Novak's testimony constitutes opinion testimony is evident from the fact that the amount of total losses continued to go down until the second day of trial. His testimony amounted to an expression of a flawed theory of prosecution: that every single dollar received by Mr. Rogers was the product of his breach of duty.

It is not sufficient to argue that the "opinion" testimony was elicited on cross-examination. What occurred on cross-examination was that the corrupt and unfair Government theory was unmasked: as if the jury would not have understood the Government's shifting of the burden of proof in the absence of cross-examination. The jury should have found the Government's theory corrupt and unfair. That they did not is because Mr. Rogers was charged with being an unethical attorney.

## II. MOTION FOR A NEW TRIAL

### A. Exclusion of Expert Testimony

It was error for the Court to exclude the expert testimony of Dr. Lanning Moldauer, Ph.D., and those portions of Mr. Edward G. Varrone's testimony that discussed the scope of a power of attorney. The notice of Defendant's intent to introduce the expert testimony was timely and the testimony of Dr. Moldauer is both relevant and reliable. Moreover, the testimony provided by the expert witnesses has substantial probative value and does not carry a danger of confusing or misleading the jury.

#### 1. Timeliness and Prejudice of Defendant's Notice of Expert Testimony

Defendant provided the Government with notice of its intent to introduce expert testimony in a timely manner. The Government's excuse that it was not given timely notice of Defendant's intent to introduce expert testimony is pretextual. The prejudice the Government claims to have suffered is nothing more than self-inflicted prejudice.

On March 27, 2006, Counsel for Defendant gave notice to the court and opposing counsel of its intentions to call at least three expert witnesses. At that time, the Government did not contend it needed more information. In actuality, it was not until the Government decided to create an issue and attempt to dismiss Defendant's expert witnesses, that it argued the notice was

6

untimely. Additionally, during pretrial motions, the Government stated that it had contacted a psychologist, and did not indicate that they were unable to present a defense to Dr. Moldauer's testimony.

Moreover, the Government asserts in its opposition that, "defendant still fails to provide any excuse to the Court for the delay other than counsel did not believe that the Government required any earlier notice as to the details of Dr. Moldauer's opinion." Gov't Opp'n at 14. This assertion is invalid. Counsel for Defendant provided an explanation in a letter written on June 15, 2006. Additionally, in preparing for a new trial date, Mr. Griffith wrote to undersigned counsel in May, emailed in early June and had a telephone conference with counsel regarding the experts as late as June 12, 2006. The Government raised no objections or complaints to the delay upon receipt of the letter or thereafter; therefore, the delay was not problematic to the Government. This is classic sandbagging. Delay without prejudice does not justify exclusion, particularly in limine.

The Government cites United States v. Buchbinder, 796 F.2d 910, 914 (7th Cir. 1986), for the proposition that, "the government cannot conduct its own investigation into the validity of the defense of lack of mental capacity and decide if it will present witnesses in rebuttal until such time as it has knowledge of the psychiatric or psychological evidence the defense intends to present." Gov't Opp'n at 14. However, in Buchbinder, "defendant filed his motion notifying the government of his intent to present expert … psychological testimony as to his mental condition, only two and one half weeks before trial and the reports of the two doctors were not delivered to the court and the government until …one week before trial." Id. In Mr. Rogers' case, counsel provided an initial notice on May 27, 2006, of its intent to introduce expert testimony; forty days before the July 6, 2006, trial date. Additionally, counsel for Defendant provided the Government

7

with an additional writing containing the content of Dr. Moldauer's testimony on June 15, 2006, twenty days before the trial date.

It should also be noted that the court in Buchbinder excluded the expert testimony because, "if it were to allow [the] defense to present its expert testimony at that late date, it would cause further delay of the case…." Id.  In Mr. Rogers' case, there was no indication that the notice given by defense counsel of the expert testimony did cause or would have caused a delay in the trial.  The Government was given forty days, or at a minimum, twenty days to procure an expert witness to rebut Dr. Moldauer.  The Governments failure to obtain an expert witness to is not due to the notice given by the Defendant.

**2.     Testimony of Dr. Moldauer was both relevant and reliable.**

The Government contends that Dr. Moldauer's expert testimony does not meet the Daubert standard; however, the Government fails to recognize that not all expert testimony can be analyzed through Daubert.  The court in Ambrosini v. Labarraque, 101 F.3d 129, 134 (D.C. Cir. 1996), stated that a court must consider, "other indicia of reliability when the Daubert factors offer limited assistance in evaluating an expert's testimony." Id. Even the cases cited by the Government support this point and provide different factors the courts use in assessing the reliability of expert testimony.

The Government cites to Housing Works, Inc. v. Turner, 362 F. Supp.2d 434, 447 (S.D.N.Y. 2005), which states that, "[e]xpert testimony is admissible where it 'will assist the trier of fact to understand the evidence or to determine a fact in issue' and is sufficiently reliable." Id. The court goes on to provide factors that should be considered in determining reliability of the expert testimony.  The factors are: "(1) whether the testimony is grounded in sufficient facts, (2) whether the underlying methodology is reliable, and (3) whether the witness has applied the

8

method reliably to the facts." Id.

The reliability of Dr. Moldauer's testimony can be established through application of this three factor analysis. First, Dr. Moldauer's testimony was grounded in sufficient facts, as he was Mr. Rogers' treating psychologist. Dr. Moldauer learned of the facts at issue through the course of his treatment of Mr. Rogers. It is through this interaction that Dr. Moldauer developed his opinions in connection with the acute problems that Mr. Rogers suffered from. Second, the methodology used by Dr. Moldauer is reliable. The methodology applied by Dr. Moldauer was based upon his education and years of practice. Such run of the mill clinical methods have been regularly applied both by Dr. Moldauer and others in the field. Lastly, Dr. Moldauer applied the method reliably to the facts of this case. Such application can only come from years of training and practice. Given that Dr. Moldauer is a practicing psychologist and recognized expert in the field, there is no doubt that he applied the method reliably to the facts at issue. Nor is there evidence to show the contrary. Therefore, as a whole Dr. Moldauer's testimony is reliable.

The Government also cites to Groobert v. Georgetown College, 219 F. Supp.2d 1, 6 (D.D.C. 2001), a case in which the court reaffirms that the gatekeeping inquiry of the court is flexible and the, "law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Id. The court, similar to Housing Works, Inc., goes on to provide a list of factors in assessing reliability of expert testimony. Id. at 10-11.

In this case, the testimony of Dr. Moldauer cannot effectively be analyzed under Daubert, as Daubert involved very complex, detailed scientific analysis and testimony dealing with disorders caused by anti-nausea drugs taken by a mother during her pregnancy. See Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). The standard used by the court to assess the

9

reliability of the expert testimony was centered around empirical testing of the theories used, peer review, known error rates and the general acceptance of the technique by the scientific community. If the court is to apply the complex analysis found in Daubert to determine the reliability of a treating psychologist's testimony, it will lead to the exclusion of all psychological testimony by an expert.

Therefore, in determining the relevance and reliability of Dr. Moldauer's testimony, consideration should be given, not to the strict standards applied in Daubert, but to "other indicia of reliability." An evaluation of the testimony through such an analysis will show that Dr. Moldauer's testimony is not only relevant but also reliable.

### 3. Dr. Moldauer's Testimony Provided a Sufficient Link between Psychological Opinions and Specific Intent Element

"In order to have probative value as to mens rea, defendant's expert testimony must relate to the particular misrepresentations attributed to him in the indictment." United States v. Bennett, 29 F. Supp.2d 236, 240 (E.D. Pa. 1997). The Indictment alleges that Mr. Rogers had the intent to deceive and to defraud his clients by, in essence, posing as their counsel and/or taking advantage of his position as their counsel to steal from them.

Dr. Moldauer's testimony provided a sufficient link to Mr. Rogers' inability to form the specific intent required by the statute. Dr. Moldauer was Mr. Rogers' treating psychologist, and did not see Mr. Rogers in connection with a plan to offer evidence at trial. Moreover, Dr. Moldauer is a practicing psychologist and expert in evaluating psychological issues that impair an attorney's professional competence and performance. Equipped with this expertise, Dr. Moldauer, in a run of the mill clinical setting, formed an opinion of Mr. Rogers and his ability to handle and cope with certain situations and pressures. The combination of Dr. Moldauer's knowledge of the facts, his education and his experience shows that his proffered testimony was

10

sufficient to permit the jury to determine what weight his opinions had on the issue of specific intent.  Dr. Moldauer provided an important glimpse at the familial background of Mr. Rogers that drove him to exhausting lengths with his elderly clients, perhaps allowing himself to cross the line between his role as an attorney and friend.  He also provided an important analysis of Mr. Rogers' capacities under the stress of this load.

### 4. Notice of topics of Edward G. Varrone's Testimony was Sufficient under Fed. R. Crim. P. 16

The purpose of Fed. R. Crim. P. 16 and expert disclosures by a defendant generally is to allow the Government to prepare for trial and to provide notice.  A defendant is required to generally describe the manner in which its experts shall attack the government's case, not to create a competing, comprehensive accounting on par with the Government's case.  <u>United States v. Mehta</u>, 236 F. Supp.2d 150, 156 (D. Mass. 2002).  The notice provided by Mr. Rogers, in comparison to those routinely used by the United States Attorney for the District of Columbia, is noticeably more complete.  The Government more often than not provides boilerplate notices of expert testimony which provide absolutely no details regarding the actual testimony of the expert.

The Government is merely entitled to notice of the general defense of the Defendant, not to Defendant's entire case.  The notice provided by Mr. Rogers amply served to inform an experienced prosecution of what may occur during the defense's case.

### 5. Those Portions of Edward G. Varrone's Testimony that were Excluded were not Questions of Law

It was an error to exclude those portions of Mr. Varrone's testimony that dealt with the scope of a power of attorney.  In support of its position, the Government is simply reciting cases which preclude expert testimony relating to conclusions of law.  Gov't Opp'n at 19.  However,

when like the instant case, you have a lawyer who is being sued; the lawyer should be entitled to provide expert testimony which shows that the lawyer's actions did not constitute malpractice. Such testimony requires an explanation of the duties of an attorney and the rules the attorney is bound by and is does not constitute a conclusion of law.

What the Government is attempting to do is unfair. The Government is trying to exclude testimony by Mr. Varrone on the grounds that the testimony provides conclusions of law. Yet, the Government requested and was granted permission to have judicial notice taken of the Rules of Professional Conduct. The Government is attempting to exclude testimony by Mr. Varrone, who is simply testifying to an individual's roles and duties as an attorney, while it is entering the rules that every lawyer is required to abide by. The Government should have had a witness who could be cross-examined as to the complexity of the rules and their applicability to Mr. Rogers' conduct. Mr. Rogers was entitled an expert to elicit his side. Mr. Varrone, indeed, should have been permitted to testify that the withdrawals made by Mr. Rogers were authorized by his clients various Powers of Attorney.

### B.     Judicial Notice of Rules of Professional Conduct

Mr. Rogers maintains his position that judicial notice of the Rules of Professional Conduct was prejudicial and confusing to the jury. Counsel for Defendant has been unable to find any case where the evidentiary basis for admission of any rule of professional conduct has been the court taking judicial notice. The Government through judicial notice of the Rules of Professional Conduct is attempting to show that Mr. Rogers was subject to legally imposed duties found in the Rules and that a violation of these duties shows that Mr. Rogers must have defrauded his clients. Such an implication is prejudicial to Mr. Rogers.

Additionally, the Government is attempting to minimize the effect of the rules on the jury

by stating that the jury did not request a copy of the rules during deliberations. Gov't Opp'n at 21. However, this fact alone is not sufficient to prove that the jury was not confused. The mere introduction of the Rules of Professional Conduct to the jury is enough to cause confusion. Even the Court of Appeals has had a difficult time in applying the Rules of Professional Conduct. It is therefore impossible to guarantee that a jury composed of laymen can make an appropriate and just use of these rules. The Rules of Professional Conduct are meant to be understood and applied by those in the legal profession, not by laymen who are unfamiliar with the roles and duties of an attorney. With little to no understanding as to the profession, it is of no surprise that a member of the jury who is made aware of these rules will speculate on their meaning and will no doubt assume that since they are in the case the violation of these rules is a crime.

## CONCLUSION

WHEREFORE, defendant Reginald J. Rogers respectfully requests that the Court enter a judgment of acquittal or, in the alternative, grant a new trial.

Respectfully submitted,

HANNON LAW GROUP, LLP


*//s// J. Michael Hannon*
J. Michael Hannon, #352526
1901 18th Street, N.W.
Washington, DC 20009
(202) 232-1907
(202) 232-3704 (facsimile)
jhannon@hannonlawgroup.com

*Attorneys for Defendant Reginald J. Rogers*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a copy of the foregoing **REPLY TO GOVERNMENT'S OPPOSTION TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND A NEW TRIAL** was sent via electronic filing this 6th day of November, 2006, to:

John D. Griffith
UNITED STATES ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 353-2453
(202) 307-2304 Facsimile

            *//s// J. Michael Hannon*
            J. Michael Hannon